35 N.Y.2d 520 (1974)
The People of the State of New York, Respondent,
v.
Mature Enterprises, Inc., Appellant.
Court of Appeals of the State of New York.
Argued November 21, 1974.
Decided December 20, 1974.
Herbert S. Kassner for appellant.
Richard H. Kuh, District Attorney (Lewis R. Friedman and Arthur Weinstein of counsel), for respondent.
Chief Judge BREITEL and Judges JONES, RABIN and STEVENS concur with Judge WACHTLER; Judge JASEN dissents and votes to affirm in a separate opinion in which Judge GABRIELLI concurs.
*522 WACHTLER, J.
The defendant corporation has been convicted of two counts of obscenity (Penal Law, § 235.05) for showing the film "Deep Throat" at a Times Square theatre owned by the corporation. A fine of $100,000 has been imposed for the two class A misdemeanor convictions.
The defendant does not dispute the finding that the film is obscene within the meaning of section 235.05 of the Penal Law, nor does it challenge the constitutionality of the statute. Those questions are not now before us. This appeal raises two primary issues: (1) whether under the State Constitution (art. I, § 2) as interpreted in People v. L. A. Witherill, Inc. (29 N Y 2d 446) the defendant corporation was entitled to a jury trial and (2) whether the fine imposed exceeds the amount permitted by section 80.10 (subd. 1, par. [e]) of the Penal Law. We have concluded that the conviction should be affirmed but the fine must be reduced.
The convictions were based on two informations filed in September, 1972 by New York City police officers. In the first information, signed by Patrolman Sullivan on September 8, 1972, the defendant was charged with promoting the alleged obscene material "on August 17, 1972 at about 1750 to 1850 hours at [the] World Theatre." In the second information, signed September 25, 1972, another officer, Patrolman Buhler states that he observed the film at the same location "on August 29, 1972 at about 2 p.m." The defendant did not deny showing the film at the place and times alleged, and the only disputed point was whether it was obscene. On this issue the defendant requested a jury trial which was denied. This was briefly followed by an article 78 proceeding in which defendant unsuccessfully sought an order prohibiting the court from proceeding with the trial. The Appellate Division denied a stay and the trial was held without a jury in December, 1972. As indicated the defendant claims, inter alia, that this procedure violated its right to a jury trial guaranteed by section 2 of article I of the New York State Constitution as recently interpreted by the court in People v. L. A. Witherill, Inc. (supra). We disagree.
The constitutional provision relied upon guarantees a jury trial in all forfeiture proceedings, and, according to Witherill (p. 450), in all "criminal proceedings * * * [which are] *523 tantamount to forfeiture proceedings". In that case the defendant was an incorporated department store which had been charged and convicted of violating the Sabbath Laws (General Business Law, §§ 2, 3, 9). We noted that under section 12 of that statute all goods offered for sale were automatically subject to forfeiture upon conviction and that the criminal court itself had the power to direct the forfeiture. Although the trial court there had not in fact imposed that sanction, we held that: its power to do so was sufficient to trigger the defendant's rights under section 2 of article I of the State Constitution.
The defendant urges that this reasoning is applicable here since section 410.00 of the Penal Law entitled "Seizure and forfeiture of equipment used in promoting pornography" provides that "[a]ny peace officer of this state may seize any equipment used in photographing, filming, printing, producing, manufacturing or projecting of pornographic still or motion pictures". (Penal Law, § 410.00, subd. 1.) This argument however overlooks the fact that before a forfeiture may be directed under this statute, "the institution of proceedings in the supreme court is necessary" (Penal Law, § 410.10, subd. 3). Thus the criminal court is not empowered to adjudge a forfeiture as an incident to conviction and the right to a jury trial guaranteed by section 2 of article I of the State Constitution does not come into play since here the criminal proceedings are not "tantamount to forfeiture proceedings". The court then properly tried the case without a jury, and as indicated the defendant was found guilty in March, 1973.
In fixing punishment the court assessed a fine. Since the defendant is a corporation, a sentence including a period of incarceration would, of course, be meaningless (People v. L. A. Witherill, Inc., 29 N Y 2d 446, supra). Thus, resorting to the only available penal sanction (see Practice Commentary, McKinney's Cons. Laws of N. Y., Book 39, Penal Law, § 80.10) the court imposed the fine pursuant to section 80.10 of the Penal Law. Under that section, applicable only to corporate defendants, the court has the option of either imposing a fine based on a fixed dollar amount ($5,000 for each conviction of a class A misdemeanor; Penal Law, § 80.10, subd. 1, par. [b]) or may assess a penalty based on the amount of the defendant's profit *524 realized from the crime which, according to the statute, may include "Any higher amount not exceeding double the amount of the corporation's gain from the commission of the offense" (Penal Law, § 80.10, subd. 1, par. [e]). Here the court chose the latter course, and pursuant to CPL 400.30, held a hearing to determine the amount of the gain.
At the hearing it was determined that the defendant's gain from each offense was less than $5,000; however the People showed that the film actually ran for 37 weeks and a total profit in excess of $100,000 was realized. Expressly relying on the amount of total profit the court imposed a fine of $100,000. In our view this was error.
The statute provides that the maximum fine for any conviction must not exceed "double * * * the corporation's gain from * * * the offense." (Penal Law, § 80.10, subd. 1, par. [e]). In this case the defendant was convicted of two offenses committed on two different dates in August, 1972. It is the profit from these offenses  from showing the film on these two dates  which must be used in determining the maximum penalty authorized by law. The defendant was not convicted of any other offenses, and no other offenses were charged. In fining the defendant for the profit allegedly made on other dates, the court went beyond the legal maximum[*] and penalized the defendant for committing crimes which were neither charged nor proven at the trial. It is fundamental to our jurisprudence that a defendant may not be convicted of offenses for which he has not been charged. (Cole v. Arkansas, 333 U. S. 196.) It would seem to be even more fundamental that he should not be punished for crimes for which he was neither charged nor convicted.
Accordingly, the order of the Appellate Term should be modified and the case remitted to the trial court for resentence and, as so modified, affirmed.
JASEN, J. (dissenting).
I agree with the majority that "Deep Throat" is hard-core pornography and that the defendant, *525 a corporation, was not entitled to a jury trial. The only issue which divides the court is whether the court may properly impose a fine, "not exceeding double the amount of the corporation's gain from the commission of the offense", computed from the date of the institution of charges to the date of conviction.
On August 17, 1972, Patrolman Michael Sullivan viewed the film "Deep Throat" being exhibited by the defendant, in the presence of Criminal Court Judge ROSENBERGER, who, after witnessing the film in its entirety, found probable cause to believe it to be obscene. On August 29, 1972, Patrolman Edwin Buhler also viewed the film and filed a criminal court complaint charging the defendant with promoting an obscene film. Criminal prosecutions were commenced against defendant by the service of a summons, charging defendant with the exhibition of an obscene film in violation of section 235.05 of the Penal Law. After a number of delays, primarily attributable to the defense, the trial began on December 19, 1972. On March 1, 1973, the court found defendant guilty of both charges. From the date of the commencement of criminal proceedings to February 25, 1973, defendant continued, without interruption, to exhibit the film. At the conclusion of a hearing, following conviction, held pursuant to subdivision 3 of section 80.00 of the Penal Law to determine the amount of the defendant's gain from the commission of the crime as a basis for determining the amount of the fine to be imposed, the Trial Judge found, in accepting defendant's own records and figures, that from a gross exceeding $1,000,000, the defendant's net profit from exhibiting the film from August 21, 1972, when defendant was officially apprised of legal proceedings, to February 25, 1973, when it ceased to be shown, was $152,924. Although the court was of the opinion that, based on these conceded figures, it could impose a fine up to $305,848, "a fair and reasonable fine" of $100,000 was imposed.
Section 80.10 (subd. 1, par. [e]) of the Penal Law provides that upon conviction a corporation may be sentenced to pay a fine not exceeding "double the amount of the corporation's gain from the commission of the offense." Subdivision 3 of the same section incorporates subdivision 3 of section 80.00, *526 which provides that "`gain' means the amount of money or the value of property derived from the commission of the crime" and permits the court to conduct a hearing to determine the amount of the defendant's gain. These sections were added to our Penal Law by chapter 1030 of the Laws of 1965, which act also revised our entire Penal Law.
Defendant argues on this appeal that the fine imposed "is unreasonable, unusual, improper and unjust and therefore is constitutionally violative of article I, section 5 of the New York State Constitution, and Amendment 8 of the Federal Constitution." Defendant further argues that such a fine may be based only on the gain it realized from the two showings specified in the criminal informations. This reasoning taken one step further would even prevent the sentencing court from looking to defendant's total net gain from the several showings of the film on these two days merely because the complaining officers had only seen one exhibition on each of said days. Followed to its logical conclusion, defendant's argument is that such a fine could be sustained only if the New York City Police Department had made one of its patrolmen a full-time "Deep Throat" viewer so that criminal informations could be filed charging multiple daily showings of the film over its total run of 37 weeks.[*]
While no legislative history regarding these sections has been found, it is inconceivable that the Legislature intended to impose such an onerous burden on law enforcement officials. Prior to the enactment of these sections, the relatively small fines authorized by the former Penal Law as sanctions against corporate criminals were generally ineffective. The Legislature addressed itself to this infirmity in the law by authorizing the imposition of meaningful criminal sanctions against criminal corporate defendants. Since the imposition of substantial fines in our revised Penal Law was intended by the Legislature to take the profit out of crime, we should give meaning and effect to such clear legislative intent by empowering a sentencing court to compute the corporation's gain from the illicit enterprise *527 from the date it was formally charged with promoting the obscene film to the date it ceased the presentation. It seems only reasonable and logical that a defendant who is charged with a violation after a finding of probable cause ceases exhibiting the obscene film pending the prompt disposition of the case should be penalized less than one who flauntingly continues uninterrupted to present for profit the same obscene film for many months. Certainly, a penalty which does not take into consideration the entire course of criminal conduct does nothing to deter would-be corporate criminals; on the contrary, by allowing the corporate criminal to retain virtually all of its illegal earnings, such token penalties serve only to encourage illegal conduct. I think our system of criminal justice has fallen well short of its goal of "equal justice under the law" if our courts cannot impose a sentence upon a corporation convicted of wrong-doing which punishes the corporation as severely as a sentence of imprisonment punishes an individual.
In my view, the addition of these penalty sections as a part of the revision of the Penal Law in 1965 represented a substantial change from prior law. If these sections are interpreted as authorizing fines based only upon the gain realized from the specific dates charged in the information, then the sections are totally ineffective and in practice give sentencing courts no more power than they previously possessed. It seems illogical to conclude, as the majority apparently does, that the Legislature would have intended to enact a law which, while purporting to alter prior law, in effect left the law totally unchanged.
The better view, it seems to me, would be to interpret the Penal Law sections before us as authorizing the fine imposed upon the defendant corporation upon the grounds that once the accusatory instrument has been filed and there has been a judicial determination of probable cause, the corporation is on notice as to the illegality of its conduct, and, hence, continues its course of conduct at its own risk. This interpretation, of course, would have no application in the determination of guilt or innocence of the defendant, but would merely apply, after conviction, to the criteria imposed at time of sentencing.
Order modified and the case remitted to the Criminal Court of the City of New York, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
NOTES
[*] This, we note, is not a case where the court merely considered other derelictions in deciding whether to impose the maximum penalty (see, e.g., Williams v. New York, 337 U. S. 241, affg. 298 N.Y. 803; cf. People v. Peace, 18 N Y 2d 230). Here the sentencing court went far beyond that.
[*] As the Trial Judge noted, had such a procedure been followed, at some point the defendant would likely complain that the police conduct constituted harassment. (73 Misc 2d 773, 780.)