**The STATE of Ohio, Appellee,**

v.

**COLE, Appellant.**

[Cite as *State v. Cole* (1997), 118 Ohio App.3d 288.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APA07–911.

Decided Feb. 27, 1997.

*Ronald J. O'Brien,* Franklin County Prosecuting Attorney, and *Thomas K. Lindsey,* Assistant Prosecuting Attorney, for appellee.

*Dennis C. Belli,* for appellant.

———

CLOSE, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas, sentencing defendant-appellant, Samuel Cole, as a dangerous offender under former R.C. 2929.01(B).

Two Columbus police officers were dispatched to the residence of Kimberly Cole on a domestic violence call. After speaking with Kimberly, the officers placed appellant under arrest for domestic violence. Appellant resisted and a struggle ensued with Officer Christine Hyatt being struck in the back with a wooden kitchen chair.

On January 11, 1996, the grand jury indicted appellant on one count of felonious assault on a police officer with a physical harm specification. On June 17, 1996, appellant withdrew his previous plea of not guilty and entered a guilty

plea to the stipulated lesser included offense of attempted felonious assault, an aggravated felony of the third degree.

The court of common pleas, on acceptance of that plea, imposed a prison sentence of three to ten years with two years' actual incarceration, made a finding that appellant was a dangerous offender, and declared him ineligible for probation. This appeal ensued, with appellant bringing a single assignment of error:

"The dangerous offender finding made by the court of common pleas is not supported by sufficient substantial evidence as to each element of the statutory definition found in former R.C. 2929.01(B)."

According to former R.C. 2929.01(B), a dangerous offender is:

"[A] person who has committed an offense, whose history, character, and condition reveal a substantial risk that he will be a danger to others, and whose conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences."

However, "before a defendant may be denied probation as a dangerous offender under R.C. 2929.01(B), the trial judge must make a determination regarding the defendant's character, condition and behavior pattern." *State v. Wood* (1976), 48 Ohio App.2d 339, 347, 2 O.O.3d 345, 350, 357 N.E.2d 1106, 1111. Moreover, "an individual's status as a repeat or dangerous offender requires the consideration of numerous variables, many of which may not be known or available to a trial judge at the time a defendant enters a guilty plea." *Id.*

Prior to the evening in question, appellant's criminal record consisted solely of two misdemeanor theft/unauthorized use of property convictions. Although appellant was convicted of two offenses, domestic violence and assault on a police officer, by two different courts for his actions on the evening in question, we hold that the criminal acts arising out of this single occurrence, standing alone, are not sufficient to result in a "dangerous offender" finding in the present case. As the legislature chose not to impose a mandatory prison term for the offense of attempted felonious assault, it logically follows that every person convicted of attempted felonious assault *may* be entitled to probation. In order for that possibility of probation to be taken away by R.C. 2929.01(B), each and every element of that statute must be complied with in order to find one a dangerous offender. *Wood.* While there is no doubt that appellant's actions on the evening in question constituted an aggressive act, that single act does not prove the other elements of R.C. 2929.01(B) necessary to find appellant to be a dangerous offender.

The evidence relied upon by the trial court in making its determination that appellant was a dangerous offender was a report by the Bureau of Criminal

Investigation and Identification ("BCI"), which consisted of no more than a list of appellant's arrests over the past twenty years. Other than this arrest record and the two misdemeanor convictions, the court had no evidence that appellant was a "dangerous offender" within the meaning of R.C. 2929.01(B). The trial court did not engage in an investigation of appellant's history, character and condition; it merely looked at the scanty information provided on the BCI report. Therefore, we hold that the arrest record, without the underlying facts and no convictions, is insufficient as evidence of a "history, character or condition" of appellant's behavior.

Appellee argues that we must review this conviction under an abuse of discretion standard, which we concede is the correct standard. However, we are not required to sanction that which amounts to plain error. Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Further, an error rises to the level of plain error when the error substantially affects the outcome of the sentencing or trial. *State v. Slagle* (1992), 65 Ohio St.3d 597, 605 N.E.2d 916.

The record before this court provides nothing more than the fact that appellant had been arrested previously on several assault related charges but that those charges were subsequently dismissed. By the trial court's failure to investigate and to procure additional evidence demonstrating appellant's history, character and condition showing a pattern of "dangerous" behavior, the outcome of the sentencing was substantially affected. We hold that the trial court abused its discretion and committed plain error in basing its decision solely on the arrest records. While the underlying facts may have sufficed, the arrests alone did not.

Therefore, we remand this cause to the trial court for proper consideration of any evidence that appellant is, in fact, a dangerous offender. The trial court may review the police reports and witness statements from the prior events/arrests to make a determination as to whether appellant is a "dangerous offender" pursuant to former R.C. 2929.01(B).

Appellant's assignment of error is sustained. The judgment of the trial court is reversed and this cause remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

TYACK, P.J., concurs.

LAZARUS, J., dissents.

LAZARUS, Judge, dissenting.

Because I do not agree with the breadth of the holding in the majority opinion, I respectfully dissent. The majority is apparently unwilling to accord any weight to appellant's prior arrests, which included an assault charge in 1978 that was dismissed, charges of assault and resisting arrest that were dismissed in 1982, charges of domestic violence, assault, aggravated menacing, and violation of a protective order that were dismissed in 1993. I believe that the trial court was entitled to take into account the report from the Bureau of Criminal Investigation and Identification ("BCI") as evidence of appellant's history, character, condition, and behavior pattern, and, in the exercise of its discretion, afford it the appropriate weight.

In the context of domestic violence, the Ohio Supreme Court recently noted that victims of battering may "initially agree to testify against their abusers, only to drop the charges once the victims have convinced themselves that the abusive behavior was a passing aberration." *State v. Busch* (1996), 76 Ohio St.3d 613, 617, 669 N.E.2d 1125, 1128 (Lundberg Stratton, J., concurring). Accordingly, in the careful exercise of discretion, the trial court should be allowed to consider cases in which the charges were dropped. "Wisdom and experience enable[ ] the judge to give appropriate weight to uncorroborated hearsay or to evidence of criminal conduct that had not resulted in a conviction." *United States v. Watts* (1997), 519 U.S. 148, ——, 117 S.Ct. 633, 639, 136 L.Ed.2d 554, 567 (construing federal sentencing guidelines) (Stevens, J., dissenting).

In this case, the accuracy of the report from BCI was not challenged by appellant or his counsel, nor was the trial court asked to disregard any of the charges or to afford appellant a chance to refute or discredit any of them. See *Williams v. New York* (1949), 337 U.S. 241, 244, 69 S.Ct. 1079, 1081–1082, 93 L.Ed. 1337, 1340–1341 (in which a defendant convicted of murder and sentenced to death unsuccessfully challenged the sentencing court's reliance on information that the defendant had been involved in thirty burglaries of which he had not been convicted). Moreover, it is undisputed that appellant assaulted his ex-wife and, after assaulting Officer Hyatt, appellant "grabbed the youngest daughter and held her * * * for awhile." These actions, coupled with evidence that appellant had been arrested and charged with domestic violence, assault, and resisting arrest on prior occasions, are evidence the trial court was entitled to consider in determining whether appellant had a history of aggressive behavior.

While I agree with the portion of the majority opinion stating that, in the present case, the criminal acts arising out of this single occurrence, *standing alone,* are not sufficient to result in a "dangerous offender" finding, I write separately to point out that, under some circumstances, a single transaction defined as "a series of continuous acts bound together by time, space, and

purpose, and directed toward a single objective" could constitute evidence sufficient to result in a dangerous-offender finding. See *State v. Wills* (1994), 69 Ohio St.3d 690, 635 N.E.2d 370 (defining "transaction" in the context of firearm specifications). The sentencing court should not be required to close its eyes to related conduct that is not formally charged, is not an element of the offense of conviction, or that the defendant was acquitted of, that arose out of a single occurrence. See, generally, *United States v. Watts, supra* (construing federal sentencing guidelines, and holding that the sentencing court may consider conduct of which a defendant has been acquitted).

Certainly the better course would have been for the trial court to obtain the fullest information possible concerning appellant's "history, character, and condition" as set forth in the dangerous offender statute. Police reports and witness statements from prior events are highly relevant in making such a determination. However, given the evidence that was before the trial court, I believe that it was not an abuse of discretion for the trial court to consider appellant's prior arrests, and that there was a sufficient factual basis for the sentencing court to classify appellant as a dangerous offender.