Larry A. JEFFERSON, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–637.

District of Columbia Court of Appeals.

Argued March 11, 1998

Decided April 23, 1998.

David A. Carr, Williamsville, NY, appointed by the court, for appellant.

Lisa C. Baskerville, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

A jury convicted appellant of unlawful possession with intent to distribute a controlled substance, cocaine, in violation of D.C.Code § 33–541(a)(1) (1995), and the trial court sentenced him to four to twelve years imprisonment. He contends on appeal that the trial court erred by concluding that he was ineligible for sentencing as a drug addict pursuant to former D.C.Code § 33–541(c)(2) (1993).[1] We affirm.

---

1. D.C.Code § 33–541(c)(2), *supra,* upon which this appeal·is based, was repealed effective May 25, 1995.

## I.

In January of 1995, appellant was arrested and charged with possession with intent to distribute cocaine. The police, responding to a radio run, observed appellant and another individual exiting a building. As appellant walked towards the exit, he stepped into the doorway of the laundry room and threw a plastic object inside. The police recovered the plastic object and found it to be a sandwich bag containing eighty-nine ziplock packets of crack cocaine. The police also recovered three bags of counterfeit, or "dummy" drugs, and forty-four dollars from appellant's person.

At trial, the prosecution presented expert testimony based on the packaging and quantity of the recovered drugs that appellant possessed the eighty-nine packets of cocaine with intent to distribute. Appellant denied possession of the recovered drugs. Appellant and his girlfriend testified that appellant did not sell cocaine, but rather sold dummy drugs to support his habit. They both testified that no one would give appellant real drugs to sell because he had a reputation for selling counterfeit drugs. Appellant presented expert testimony that an individual who sold counterfeit drugs would not also sell real drugs.

Following conviction, the trial court held a sentencing hearing to determine appellant's eligibility for the addict exception. D.C.Code § 33–541(c)(2), *supra*. Appellant testified that he had been using crack cocaine regularly for approximately three years, and that his only expenses were drugs and food. At the time of his arrest, appellant supported his drug habit by selling counterfeit drugs. He testified that if he had been in possession of the eighty-nine packets of crack cocaine he would not have distributed them, but rather would have consumed them all himself. He further testified that he did not sell real cocaine to support his habit.

The trial court, after determining that appellant did not have any disqualifying convictions and that appellant was a cocaine addict, considered whether appellant's primary purpose in possessing with intent to distribute was to support his addiction. The trial court accepted the jury verdict that appellant intended to distribute the cocaine. The trial court found that appellant could have intended to share some of the drugs with other people, and discussed the broad definition of "distribution." Finally, the trial court stated:

I have the testimony from [appellant] that if he had [the cocaine] he would have used it all. And that testimony isn't, so to speak, usable circumstantial evidence to support the Addict Exception hearing.... [B]ecause merely intending to use drugs for your own personal purposes doesn't have the element required by the statute of intending to distribute it for the primary purpose of obtaining a drug. It writes out of the statute a portion of the statutory language. So, this is, to some degree, a factual determination.

I have to determine whether there is enough circumstantial evidence to suggest that those eighty-nine bags were possessed by Mr. Jefferson for the primary purpose of enabling him to get other drugs, not the same drugs, other drugs, and I can't so find.

Appellant argued, and continues to argue on appeal, that he should not be precluded from sentencing under the addict exception because he contends that he would have himself used the drugs for which he was convicted of possession with intent to distribute.

## II.

Former D.C.Code § 33–541(c)(2) (1993 Repl.) reads, in pertinent part:

[T]he court may, in its discretion, waive the mandatory-minimum sentencing provisions ... when sentencing a person who has not been previously convicted in any jurisdiction in the United States for knowingly or intentionally manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance ... if the court determines that the person was an addict at the time of the violation ..., and that such person knowingly or intentionally manufactured, distributed or possessed with intent to manufacture or distribute a controlled substance ... for the primary purpose of enabling the offender to obtain a narcotic drug or

abusive drug which he required for his personal use because of his addiction to a narcotic drug or an abusive drug.

 We have held repeatedly that, "[t]his court will accept the trial court's resolution of conflicting testimony, and will not disturb a factual finding underlying the trial court's determination of eligibility for the addict exception unless the finding is plainly wrong or without evidence to support it." *Stroman v. United States,* 606 A.2d 767, 769 (D.C.1992); *see* D.C.Code § 17–305(a) (1997). We extend this deference because the trial court is entrusted with wide discretion, "in determining the kind and extent of punishment to be imposed within limits fixed by law...." *Butler v. United States,* 379 A.2d 948, 950 (D.C.1977) (quoting *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). The discretion is wide enough that, "even if the defendant is found to be eligible for sentencing under the addict exception, it remains within the sound discretion of the trial judge to determine whether to use the exception in sentencing." *Stroman, supra,* 606 A.2d at 770. However, the trial court's sentencing determination must be based on, "reliable information and appropriate considerations." *Grant v. United States,* 509 A.2d 1147, 1155 (D.C.1986). The burden is on the defendant to proffer evidence showing eligibility for the addict exception,[2] and the defendant must be given, "a fair opportunity to demonstrate his eligibility and to persuade the judge that his addiction and offense make inappropriate imposition of the mandatory minimum sentence." *Id.* at 1154–55.

 In light of appellant's contention that he would not have sold the cocaine, but rather would have consumed the entire quantity of cocaine himself, appellant failed to present any evidence that distribution of the cocaine would have been for the primary purpose of supporting his addiction.

The trial court properly noted that the determination of appellant's primary purpose in possessing with intent to distribute is a factual one. In making this determination, the trial court was operating within the wide discretion discussed above. Appellant did not satisfy his burden of showing that he committed the offense for the primary purpose of supporting his drug addiction. The trial court's determination that appellant was not eligible for the addict exception, therefore, was not plainly wrong or without evidence to support it.

*Affirmed.*

SCHWELB, Associate Judge, dissenting:

In my opinion, the trial judge's conclusion that Jefferson did not qualify for the addict exception is based upon a subsidiary finding that is not supported by the evidence. I would so hold and remand for further proceedings.

### I.

Jefferson was convicted by a jury of unlawful possession of cocaine with intent to distribute it (PWID). The conviction was based on Jefferson's alleged possession of a sandwich bag containing eighty-nine ziplock packets of crack cocaine. Officers also recovered three "burn bags" (false cocaine) from Jefferson's person.

Jefferson claimed at trial that he had no connection with the cocaine in the sandwich bag, and that the arresting officer had "lied on" him in retaliation for a prior encounter in which charges which the officer made against Jefferson had been dismissed. Jefferson also testified at trial that, although he was an addict, he never sold drugs, but that he obtained the money he needed to buy cocaine by selling burn bags instead.[1]

---

**2.** A defendant's proffer of evidence for eligibility for the addict exception must include: (1) that he has no prior disqualifying convictions; (2) that he was addicted to an enumerated drug at the time of the offense; and (3) that his addiction was the primary purpose for the commission of the offense. *Grant, supra,* 509 A.2d at 1154. It is undisputed in this case that appellant is an addict and that he has no disqualifying convictions.

**1.** After Jefferson had attempted at trial to defend his burn bag business against the prosecutor's challenge to its probity, the cross-examination continued:

Although the prosecution and defense vigorously contested the question whether Jefferson was ever in possession of the eighty-nine ziplock packets, both parties unequivocally took the position that the cocaine was packaged for ready sale. Detective Myron Smith, the government's drug expert, testified that the eighty-nine bags were "typical of the packaging found for crack cocaine for sale in the streets of the District of Columbia." Smith stated that, at twenty dollars·a bag, the cocaine had a street value of approximately $1780, and that it would be quite unusual .for a person to have so large an amount for his own use. This was so because it would be much cheaper to buy that amount of crack cocaine in bulk form, and also because

> the main disadvantage [of buying 89 separate ziplock bags] is you do not know what you are buying. One or two ziplocks can be quite legitimate for crack .cocaine, a rock of crack cocaine, and the other 85 could be what's known as dirt bags. They could be counterfeit and you have wasted that amount of money, because there are no refunds in the drug business. You have just exhausted all your money and wasted it.

Norman A. Hill, a twenty-five year police veteran who testified as an expert for the defense, agreed with Detective Smith that the ziplock bags had been packaged for sale:

Q. ... And in light of your experience, wouldn't you also agree with me that 89 ziplocks is particularly a large amount for one individual to have?

A. Oh, absolutely.

Q. And 89 ziplocks is an amount that would be used for sale, isn't that correct?

A. And looking at the way it is packaged and broken down in ziplock bags, yes.

Q. Selling something fake to somebody and getting their money is not taking advantage of them?
A. No ma'am.
Q. You think that is honest?
A. Definitely not [an] honest thing to do.
Q. But it is not taking advantage?
A. No, ma'am.
Q: Why?
A. Because that is the way the game is. The coke game.

Q. So, would you agree with me that it looks like the evidence in this case looked like it was packaged for sale, right? ·

A. Yes, it is ready to sell, street level.

During closing argument, the prosecutor likewise told the jury that the cocaine was "packaged for street sale in individual little bags in a certain size." She added that the bags were "ready to be sold on the street and distributed to other people." Jefferson's attorney never contradicted this proposition, but based his defense on a claim that there was reasonable doubt as to whether Jefferson possessed the cocaine.

· The jury, obviously crediting the prosecution witnesses and disbelieving Jefferson, found Jefferson guilty of PWID. In the context in which the case was tried, this meant that, in the jury's view, Jefferson possessed the drugs and intended to sell them. There was no evidence that Jefferson possessed the contents of the sandwich bag for his own use or for the purpose of sharing the cocaine with friends or associates.[2]

## II.

At the hearing on Jefferson's request for sentencing pursuant to the "addict exception" to the mandatory minimum sentencing statute then in effect, *see* D.C.Code § 33–541(c)(2) (1993), the prosecutor conceded that Jefferson was an addict, and the trial judge so found. The disputed question at that stage of the case was whether Jefferson possessed the cocaine with the intent to distribute it "for the primary purpose of enabling [him] to obtain a narcotic drug or abusive · drug which he required for his personal use because of his addiction...." *Id.* Jefferson's attorney conceded that, notwithstanding Jefferson's claims of innocence, the judge was bound to accept the jury's verdict that

2. Jefferson testified at trial, and again at the "addict exception" hearing, that he had never possessed the eighty-nine bags. He asserted that if he had possessed these bags, then he would have consumed the cocaine himself. This testimony was purely hypothetical, and Jefferson said nothing from which the jury could have inferred that he intended to share the cocaine with friends, rather than to sell it.

Jefferson possessed the cocaine with the intent to distribute it. Counsel continued as follows:

> [W]hat we are saying is that, accepting that the jury has found that he had it, and that they believed that that supported the inference of his having it in order to sell it, nonetheless, his own circumstances and testimony established that whatever he had, everything he did, was in order to get cocaine for himself.

> He spent no money on anything else. He did nothing else except chase after his personal satisfaction in the use of, of crack cocaine at the time.

The trial judge accepted the jury's verdict that Jefferson possessed the cocaine with intent to distribute it. She concluded, however, that the verdict was not necessarily inconsistent with Jefferson's claim, apparently credited by the judge, that Jefferson sold only burn bags but not cocaine. The judge believed that the verdict could be reconciled with Jefferson's testimony because Jefferson might have intended to distribute the cocaine by sharing it with friends, rather than by selling it on the street, and because the jury might have so found. In my opinion, this hypothesis is entirely lacking in any support in the record.

It is true, as the trial judge recognized, that the term "distribution" encompasses conduct other than sale, and that a defendant may properly be convicted of PWID if he intends to "distribute" the drugs by sharing them with his friends, rather than by selling them. *See, e.g., Long v. United States,* 623 A.2d 1144, 1147 (D.C.1993) (citations omitted). There is no substantial nexus, however, between this correct legal proposition and the record in the present case. Both expert witnesses testified that the eighty-nine bags of cocaine were packaged (and therefore presumably intended) for *sale*, not for sharing. There was no evidence to the contrary, and the case was presented to the jury as one involving an intent to sell, not an intent to share.

In order to find beyond a reasonable doubt, on this record, that Jefferson was guilty of PWID because he intended to distribute cocaine by sharing it, rather than by selling it, the jury would have had to engage in a "bizarre reconstruction of the facts of the case." *Anderson v. United States,* 490 A.2d 1127, 1129 (D.C.1985) (per curiam). I cannot agree with the trial judge's view that the verdict could reasonably have rested upon this ground. The only interpretation of the jury's verdict which can be squared with the evidence in the case and with the contentions of the parties is that the jurors credited the government's case: Jefferson possessed the cocaine and specifically intended to sell it.

If, as I suggest, the "intent-to-sell" construction of the jury's verdict is the only reasonable one, then Jefferson was substantially prejudiced by the trial judge's reliance on an "intent-to-share" hypothesis. The judge appears to have credited Jefferson's claim that, in effect, just about everything that he did was geared to obtaining cocaine to satisfy his craving. If this was true of Jefferson's activities in general, and if, as the jury found, Jefferson possessed eighty-nine ziplock bags of crack cocaine and intended to sell them, the inference that the intended sales were designed to feed his addiction was a great deal stronger than it would have been if his purpose had been to share cocaine with friends. Because the "intent to share" theory appears to have been central to the judge's disposition, I would remand the case with directions that the trial judge eliminate from her calculus, in any further consideration of Jefferson's eligibility for addict exception sentencing, the "intent to share" finding on which her initial determination was apparently based.

### III.

Nothing that I have written is meant to suggest that Jefferson should (or should not) receive a more lenient sentence than the one imposed by the judge. It is important to reiterate that "even if the defendant is found to be eligible for sentencing under the addict exception, it remains within the sound discretion of the trial judge to determine whether to use the exception in sentencing." *Stroman v. United States,* 606 A.2d 767, 770 (D.C.1992). According to the report of the

Pretrial Services Agency, Jefferson had at least nine prior convictions at the time of his arrest, including one for possession of marijuana with intent to distribute it.[3] In an interview with a representative of the Criminal Justice Act office following his arrest in this case, Jefferson lied regarding his employment. After his conviction, he lied about his drug use to the probation officer who was preparing the presentence report. The jury's verdict established that Jefferson lied at trial, and he admitted lying to his cocaine-craving customers.

Many drug abusers have numerous convictions, and some of them make a habit of lying.[4] If the "addict exception" were confined to honest citizens who have never committed a crime, I suppose that not very many defendants would be eligible. Even so, a sentencing judge may or may not find conduct such as that in which Jefferson has engaged over the years to be compatible with compassionate rehabilitative sentencing under the addict exception. This, however, is a discretionary call. If the judge, in the exercise of her discretion, proposes to impose a mandatory minimum sentence regardless of Jefferson's eligibility for the addict exception, then a determination whether he is eligible will serve no useful purpose. *See Mozelle v. United States,* 612 A.2d 221, 223–24 (D.C. 1992).

## IV.

For the foregoing reasons, I would vacate Jefferson's sentence and remand for further proceedings.

---

**3.** Jefferson's PWID marijuana conviction did not render him ineligible for sentencing under the addict exception, because marijuana (cannabis) is not a Schedule I, II, or III substance. *See* D.C.Code §§ 33–522, –541(c)(2).

**4.** *Compare State v. Fong Loon,* 29 Idaho 248, 158 P. 233, 236 (1916) ("We believe it will be admitted that habitual users of opium, or other like narcotics, become notorious liars,") *and Godfrey v. United States,* 122 U.S.App. D.C. 285, 288–89, 353 F.2d 456, 459–60 (1965) (per curiam) (Miller, J., dissenting) ("During the last fifty years I have had many opportunities to observe the way

drug addicts testify in criminal cases about matters which concern their own interests. On the basis of that experience, I believe Judge Pine was correct in saying that they are inherently perjurers....") *with* the majority opinion in *Godfrey,* holding that a jury instruction to the effect that a drug addict is inherently a perjurer was "obviously erroneous." 122 U.S.App. D.C. at 287, 353 F.2d at 458. *See also Coates v. United States,* 558 A.2d 1148, 1152–55 (D.C.1989), in which we determined that there was no general scientific consensus regarding the mendacity of drug abusers.