**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Benson WOODS, Jr.,
Defendant–Appellant.**

**No. 89–7009
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

July 27, 1990.

---

J. Craig Jett, Dallas, Tex. (court appointed), for defendant-appellant.

Richard B. Roper, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before GEE, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Robert Benson Woods, Jr., was convicted pursuant to his guilty plea of conspiracy to manufacture and distribute amphetamine and was sentenced to 240 months in prison and five years of supervised release. On appeal, Woods raises numerous challenges to his sentence, contending (1) that the district court improperly disregarded a factual stipulation made by the parties and considered uncharged conduct in calculating his base offense level, (2) that facts relevant to his sentence were not proved beyond a reasonable doubt, (3) that questioning by the probation officer during the presentence investigation infringed upon his fifth and sixth amendment rights, and (4) that the probation officer's role in the sentencing process violates constitutional separation of powers principles. Concluding that all of these assertions are without merit, we affirm.

## I.

On two separate occasions in early November 1988, Woods and codefendants Robert Lee Jones and Gary Lusk sold 108 grams of amphetamine to a Drug Enforcement Administration ("DEA") informant. Based upon these transactions, DEA agents developed sufficient probable cause to obtain a search warrant for Woods's home; when they executed the warrant on November 18, they found Woods and codefendant John Frederick Hansen in possession of 223 grams of amphetamine. Further investigation following Woods's arrest revealed that Woods had owned and operated three different amphetamine laboratories—one in Oklahoma, one in Red Oak, Texas, and one in Van Zandt County, Texas—and had employed his codefendants and other individuals as couriers and as amphetamine "cooks." [1]

On December 6, 1988, Woods was formally charged with conspiracy to manufacture and distribute amphetamine in violation of 21 U.S.C. § 846, and distribution and possession of amphetamine in violation of 21 U.S.C. § 841(a)(1). Pursuant to a plea agreement, Woods signed a factual resume admitting his involvement in the two sales to the DEA informant and his ownership of the drugs found at his residence and pleaded guilty to the conspiracy count. In exchange, the government agreed to dismiss the remaining charges against Woods and to stipulate that the total amount of amphetamine involved in the conspiracy was 440 grams. [2]

**1.** On November 6, 1988, Hansen had been arrested leaving the Van Zandt laboratory with 1½ pounds of liquid amphetamine that he planned to deliver to Woods; a search of the laboratory on November 7 uncovered another 350 milliliters of the drug. Following his November 18 arrest at Woods's home, Hansen told DEA agents that he worked for Woods and that Woods owned and operated the Van Zandt laboratory. Hansen also testified about these matters at Woods's sentencing hearing.

**2.** This amount represents the approximate total of the 223 grams of amphetamine seized at Woods's home on November 18, 1988, and the two 108–gram packages sold to the DEA informant earlier that month.

**3.** In addition, the commentary to § 6B1.4(d) provides in pertinent part,

The district court, however, declined to accept the stipulation, believing it to be inaccurate in that it did not include the 1½ pounds of amphetamine found on Hansen's person at his November 6 arrest or the 350 milliliters of the drug discovered during the November 7 search of the Van Zandt laboratory. Accordingly, the court based its calculation of Woods's sentence upon a significantly larger amount of drugs. Woods now challenges, on several theories, both the district court's decision to disregard the stipulation and the probation officer's role in investigating his crime.

## II.

Woods first maintains that since the district court accepted the plea agreement, it also was bound to accept the parties' stipulation as to the amount of drugs involved. This argument, however, is refuted by the plain language of the Sentencing Guidelines and for that reason has been rejected by this and other circuits. Section 6B1.4(d) of the Guidelines states that "[t]he Court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing." [3] Interpreting that section, we held in *United States v. Garcia,* 902 F.2d 324, 326–27 (5th Cir.1990), that the district court was entitled to base a defendant's sentence upon a significantly larger amount of drugs than that charged in the indictment and stipulated by the parties at the time of the guilty plea. [4]

Section 6B1.4(d) makes clear that the court is not obliged to accept the stipulation of the parties. Even though stipulations are expected to be accurate and complete, the court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.

**4.** *See also United States v. Gaines,* 888 F.2d 1122, 1123 (6th Cir.1989) (district court not bound by stipulation that defendant was a "minor participant"); *United States v. Nunley,* 873 F.2d 182, 187 (8th Cir.1989) (district court not bound by stipulation that defendant accepted responsibility).

■ In a related vein, Woods contends that evidence regarding the drugs seized in Hansen's first arrest and in the search of the Van Zandt laboratory was "extrinsic" and therefore should not have been considered in setting his base offense level. However, we have held that in setting the sentence, a judge may consider conduct for which a defendant has not been convicted. *United States v. Taplette,* 872 F.2d 101, 106 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989). *See also United States v. Isom,* 886 F.2d 736, 738 (4th Cir.1989) (district court could consider offense of which defendant had been acquitted in determining his sentence).

Guidelines § 1B1.3(a)(1) directs the sentencing judge to consider "all acts or omissions ... for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction." The commentary to that section explains that where the defendant has been convicted of conspiracy, the judge should consider "conduct in furtherance of the conspiracy that was known to or reasonably foreseeable by the defendant."

Woods was convicted of conspiring with Hansen, Lusk, and Jones to manufacture, possess, and distribute amphetamine. Both Hansen and Lusk told the probation officer that they worked for Woods, who owned and operated the Van Zandt laboratory; Hansen testified to the same effect at the sentencing hearing. When Hansen was arrested with 1½ pounds of amphetamine, he was leaving the Van Zandt laboratory. Accordingly, the district court properly considered the drugs found in the Van Zandt laboratory and on Hansen's person in calculating Woods's sentence.

■ Woods's argument that his participation in the Van Zandt operation could not be considered unless proved by a reasonable doubt[5] is foreclosed by *United States v. Casto,* 889 F.2d 562, 569–70 (5th Cir.1989), *cert. denied,* — U.S. —, 110

S.Ct. 1164, 107 L.Ed.2d 1067 (1990). There, we held that matters relevant to sentencing rather than to guilt or innocence must be shown only by a preponderance of the evidence. *See also United States v. Urrego-Linares,* 879 F.2d 1234, 1237–38 (4th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United States v. Wright,* 873 F.2d 437, 441–42 (1st Cir.1989).

## III.

■ Having disposed of Woods's three challenges to the court's decision to disregard the stipulation, we now address his arguments regarding the role of the probation officer. Woods first contends that the probation officer violated his fifth amendment right against self-incrimination and his sixth amendment right to counsel by interviewing him without counsel present during the presentence investigation. However, we considered and rejected identical fifth and sixth amendment challenges in *Brown v. Butler,* 811 F.2d 938, 940–41 (5th Cir.1987). There, we explained that a defendant waives his right to remain silent by pleading guilty[6] and, moreover, that a routine presentence interview (at least in non-capital cases) is "not a critical stage of the proceedings in which counsel's presence or advice is necessary to protect the defendant's right to a fair trial." *Id.* at 941.

■ Finally, Woods raises a novel argument that the investigative role of the probation officer under the sentencing guidelines violates constitutional separation of powers principles. He contends that although the United States Probation Office typically is considered an arm of the courts, it recently has taken on a prosecutorial function in investigating convicted defendants and making recommendations regarding sentencing. In his case, Woods maintains, the probation officer was more prosecutorial than the prosecutor—while the prosecutor stipulated that only 440

---

5. Wood does not contend that the district court was incorrect in concluding that the testimony introduced at the sentencing hearing demonstrated his involvement with the Van Zandt laboratory by clear and convincing evidence.

6. *See also Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *United States v. Escandar,* 465 F.2d 438, 441 (5th Cir.1972).

grams of amphetamine were involved in the conspiracy, the probation officer recommended that the court disregard that stipulation and base Woods's sentence upon a larger quantity of drugs.

Although this issue is one of first impression in this circuit, we agree with the Ninth Circuit's recent holding in *United States v. Belgard*, 894 F.2d 1092 (9th Cir.1990), that the investigative function of the probation officer in no way undermines the separation of executive and judicial powers. In *Belgard*, the court reviewed Supreme Court decisions addressing the role of the probation officer and noted that while the Court had never squarely addressed the separation of powers argument raised by the defendant, it had indicated that there was "nothing unconstitutional about nonadjudicatory activities being undertaken by auxiliary bodies" within the judicial branch, *id.* at 1096 (citing *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 666 n. 20, 102 L.Ed.2d 714 (1989)), and had spoken approvingly of the probation officer's investigative function in *Williams v. New York*, 337 U.S. 241, 249–50, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949).[7] As the *Belgard* court correctly observed, *Williams* is a "clear repudiation of the notion that probation officers cannot properly function within the judicial branch of the government." 894 F.2d at 1097.

Moreover, we reject Woods's suggestion that the probation officer in his case acted in a prosecutorial capacity simply because he recommended that the court consider a higher quantity of drugs than that stipulated by the prosecutor. Instead, we believe that that fact instead demonstrates the probation officer's independence of the prosecution and his obligation to recommend what he believes to be a correct sentence to the court. *See Brown,* 811 F.2d at 941 (probation officer is "arm of the court charged with assisting the court in arriving at a fair sentence").

7. In *Williams*, 337 U.S. at 249–50, 69 S.Ct. at 1084–85, the Court opined that

    [u]nder the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have

Because Woods has shown no error in the district court's decision to disregard the stipulation or in the probation officer's conduct during the presentence investigation, the judgment of sentence is AFFIRMED.

not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information.