**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4235

ROBERT ANTHONY WASHINGTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4246

ALEX DAVIS,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-96-4)

Argued: April 10, 1998

Decided: June 1, 1998

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and
WILLIAMS, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Chief Judge Wilkinson wrote the opinion, in which Judge Widener
and Senior Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** John Miles Morgan, YOUNG, MORGAN & CANN, Clarksburg, West Virginia, for Appellant Washington; Rodney Lloyd Bean, STEPTOE & JOHNSON, Morgantown, West Virginia, for Appellant Davis. Sherry L. Muncy, Assistant United States Attorney, Elkins, West Virginia, for Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney, Elkins, West Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Robert Anthony Washington pled guilty to aiding and abetting in the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Alex Davis, a codefendant, pled guilty to conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846. Washington appeals his sentence, arguing that the district court impermissibly relied on his statements to a probation officer that were immunized under his plea agreement with the government. We agree with Washington and remand his case for further sentencing proceedings. Davis also raises challenges to his sentence. Finding his contentions without merit, we affirm the judgment of the district court with respect to his sentence.

I.

In February 1996, the United States filed a ten-count indictment charging Washington, Davis, and three codefendants with various drug-related offenses. Both Washington and Davis ultimately entered into plea agreements with the government. Washington pled guilty to one aiding and abetting count, 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2, and Davis pled guilty to one conspiracy count, 21 U.S.C. § 846.

In his plea agreement, Washington promised to "be completely forthright and truthful with federal officials . . . with regard to all inquiries made of him." In return, the government agreed "that any information obtained from Mr. Washington in compliance with this

2

cooperation agreement will be made known to the sentencing Court; however, pursuant to Guideline 1B1.8, such information may not be used by the Court in determining Mr. Washington's applicable guideline range." Washington and the government stipulated in the agreement that the total relevant conduct "would be at least 4 but less than 5 grams of cocaine base."

At his sentencing hearing, Washington moved for a reduction in his offense level on the grounds that he was a minimal or minor participant. See U.S.S.G. § 3B1.2. He argued that the conduct with which he was charged was minimal in comparison to the larger conspiracy identified in the indictment. During the sentencing hearing, the district court itself called Mark Sneberger, the probation officer who had prepared Washington's presentence report. During his testimony, Sneberger recalled a conversation he had with Washington after Washington had entered into his plea agreement. Washington had at that time admitted that the relevant conduct to which he had stipulated underestimated the amount of drugs he actually had distributed. Washington's counsel objected to Sneberger's testimony, but the district court allowed it, reasoning, "[I]f you are seeking a reduction in role for your client, based on his role in the total conspiracy, what he told the probation officer about that is certainly important for me to know."

The district court later in the hearing indicated that, without additional information from Sneberger, "it would appear that Mr. Washington also ought to be entitled to" the reduction in offense level that one of his codefendants received. But the district court stated further: "Mr. Washington had this follow-up conversation with Mr. Sneberger, and I'm aware of what was said. Based on what was said, I cannot ignore it and grant your defendant a two-level reduction for a minor role." The court then sentenced Washington to 51 months in prison plus three years supervised release.

Davis and the government stipulated in his plea agreement that his total relevant conduct "would be at least 100 but less than 200 grams of cocaine." The agreement stated that this amount was based on trips Davis made between West Virginia and Pennsylvania, including but not limited to a trip made on May 20, 1995. That day the Pennsylvania State Police stopped Davis for speeding and uncovered cocaine

3

during a consent search of the car he was driving. A July 5, 1995 lab report issued by a forensic scientist at the Harrisburg Regional Laboratory of the Pennsylvania State Police concluded that the "off-white chunky and powdery material and . . . beige chunky material" found in Davis' car weighed 103 grams and contained cocaine.

When Sneberger was compiling Davis' presentence report, he noticed that the lab report appeared to describe a substance that included cocaine base. Sneberger therefore contacted the forensic scientist who had prepared the July 5, 1995 report and asked her if part of the drugs might have been cocaine base. After consulting her files, the scientist indicated that approximately twenty grams was cocaine base. Sneberger then asked her to issue an amended report. That December 4, 1996 lab report indicated that the substance seized on May 20, 1995 included 20.3 grams of cocaine base and 82.7 grams of cocaine hydrochloride. Sneberger appended the amended report to Davis' presentence report.

Because the amendment to the lab report dramatically changed his sentence, Davis objected to the report's reliability at his sentencing hearing. The district court called Sneberger to testify, examined him, and entertained argument from Davis. The district court then found by a preponderance of the evidence that the amended lab report was reliable, and sentenced Davis to 70 months in prison plus five years supervised release. Both Washington and Davis now appeal their sentences.

II.

Washington appeals the district court's denial of his motion for a reduction in offense level pursuant to U.S.S.G.§ 3B1.2. He argues that the district court made that decision by improperly relying on statements he made to the probation officer preparing his presentence report. Washington contends that pursuant to his plea agreement and U.S.S.G. § 1B1.8 his statements could not be used in determining his applicable guideline range.

We agree. The plea agreement Washington entered into with the government imposed upon him a duty to be completely truthful with respect to all inquiries made by federal officials. The government in

4

return guaranteed Washington that any information obtained from him pursuant to such cooperation, in accordance with U.S.S.G. § 1B1.8, would "not be used by the Court in determining [his] applicable guideline range." Section 1B1.8(a) similarly provides that when "the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range." And the commentary further clarifies that "where the defendant, subsequent to having entered into a cooperation agreement, provides such information to the probation officer preparing the presentence report, the use of such information remains protected by this section." Id. § 1B1.8 Application Note 5; see also United States v. Fant, 974 F.2d 559, 564 (4th Cir. 1992) (section 1B1.8 "applies to statements made to probation officers which are later incorporated into presentencing reports").

The government contends that the district court did not use Washington's statements to Sneberger in denying the section 3B1.2 reduction. It is true that Sneberger testified at the sentencing hearing to more than just Washington's post-plea-agreement statements. For example, Sneberger recalled for the court the results of his independent investigation into Washington's relevant conduct. Moreover, it appears that the district court, in concluding that Washington was neither a minimal nor minor participant for purposes of section 3B1.2, did credit that testimony to some extent by finding that Washington operated "in the role of an ordinary drug dealer."

Nevertheless, the district court's further statements during the sentencing hearing demonstrate a clear reliance on the conversations Washington had with Sneberger after Washington had entered into his plea agreement with the government. For example, when Sneberger first testified about Washington's statement that he had distributed more drugs than that to which he had stipulated in the plea agreement, Washington's counsel immediately objected on the grounds the statement could not be used pursuant to his client's plea agreement. In overruling the objection, the district court stated that "what [Washington] told the probation officer about [his role in the total conspiracy] is certainly important for me to know." Moreover, when it ultimately ruled on the motion for a reduction in the offense level pursuant to section 3B1.2, the district court expressly referred to Washington's

5

"follow-up conversation with Mr. Sneberger." Citing that conversation, the court stated that "[b]ased on what was said, I cannot ignore it and grant your defendant a two-level reduction for a minor role." We think these statements by the district court lead ineluctably to the conclusion that it improperly relied on the protected statements made by Washington in determining his offense level and, thus, his guideline range.

We have twice before held the government to promises that statements made by cooperating defendants would not be used in determining guideline ranges. In Fant, we held that statements made to probation officers after the execution of such a plea agreement could not form the basis for a section 3C1.1 enhancement for obstruction of justice. 974 F.2d at 564-65. And in United States v. Malvito, 946 F.2d 1066, 1068 (4th Cir. 1991), we held that a district court could not deny a defendant a downward departure based on "self-incriminating information provided by the defendant under an express governmental promise not to use it against him." The district court's reliance on comments Washington made to Sneberger after the execution of the plea agreement constituted a similar breach of Washington's agreement, and is specifically forbidden by U.S.S.G.§ 1B1.8. We therefore vacate Washington's sentence and remand for resentencing to allow the district court to determine, without the assistance of Washington's statements to Sneberger, whether Washington deserves a role reduction pursuant to section 3B1.2.

III.

We next address Davis' challenges to his sentence. He first contends that the amended lab report was not sufficiently reliable for the district court's consideration. We disagree. The district court found by a preponderance of the evidence that the amended lab report was reliable. That determination was not clearly erroneous. See United States v. Jones, 31 F.3d 1304, 1315 (4th Cir. 1994) (court applies clearly erroneous standard to factual determinations in sentencing).

Davis fails to articulate a single concrete challenge to the amended report, choosing instead to raise a host of potential shortfalls that he cannot prove. For example, Davis objects to the reliability of the amended report because it fails to indicate whether the cocaine was

6

retested or even still existed. This challenge, like Davis' other attacks, might have proven relevant had Davis called the forensic scientist as a witness and attempted to impeach her credibility. He did not. Davis also did not testify on his own behalf as to whether the substance found in his car contained cocaine base. The district court examined Sneberger regarding his interaction with the Pennsylvania State Police laboratory and in the end chose to rely on the laboratory's formally issued report. We find no reason to doubt the district court's confidence in the amended report and therefore reject Davis' first challenge.*

Davis also poses a constitutional objection to his sentence because of the probation officer's investigation into the specific makeup of the cocaine substance found in his possession in May 1995. Davis contends that Sneberger conducted an investigation "arguably more thorough than that performed by the United States." As the probation officer is an agent of the court, Davis argues that Sneberger's allegedly overzealous investigation placed the court in the role of prosecutor and judge, thereby violating the constitutional principle of separation of powers. We find Davis' argument meritless.

Davis does not urge us to hold that probation officers can never conduct investigatory activities because of their affiliation with the judicial branch. This concession is wise, as the investigation by probation officers of criminal defendants' backgrounds is ancillary to the courts' determination of appropriate, individualized sentences. See Williams v. New York, 337 U.S. 241, 249-50 (1949). In performing such a role, the probation officer does not act in a prosecutorial function: "Throughout the process of interviewing a defendant, preparing a presentence report, and discussing the report during a presentence conference with the court, a probation officer continues to be a neutral, information-gathering agent of the court, not an agent of the

_____

*Davis ultimately complains that the amendment to the laboratory report increased his sentence by approximately fifty months. Any unfairness Davis would have suffered, however, was mitigated when the district court went beyond the requirements of the plea agreement and offered Davis a chance to withdraw his guilty plea. Cognizant of the increased sentence, Davis nevertheless declined and elected to stand by his plea.

7

prosecution." United States v. Johnson, 935 F.2d 47, 49-50 (4th Cir. 1991). Thus, courts have rejected separation-of-powers objections to the role of probation officers under the sentencing guidelines. See United States v. Woods, 907 F.2d 1540, 1543-44 (5th Cir. 1990); United States v. Belgard, 894 F.2d 1092, 1096-98 (9th Cir. 1990).

Davis, however, advances a more nuanced argument. He claims that by allegedly going beyond the bounds of normal investigation, Sneberger crossed the line between neutral probation officer and prosecutorial advocate. We disagree. Sneberger simply sought out all available information that would prove relevant to the district court's sentencing proceeding, as it was his job to do. That Sneberger questioned the general findings of the original lab report on the basis of the physical descriptions contained therein shows only that he performed his investigatory duty well. Similarly, the fact that he ultimately recommended a higher amount of drugs than the government originally believed to be involved does not prove that Sneberger acted in a prosecutorial capacity. Accuracy is the first principle of the sentencing process, and if the government's information was inaccurate, it should have been corrected.

A similar claim was advanced in Woods. There, a criminal defendant claimed a probation officer acted in a prosecutorial capacity because that officer recommended a higher quantity of drugs than that to which the prosecutor had stipulated. 907 F.2d at 1544. The Fifth Circuit rejected that suggestion, finding instead that the probation officer's action demonstrated his "independence of the prosecution and his obligation to recommend what he believes to be a correct sentence to the court." Id. We agree with the holding in Woods, and accordingly reject Davis' separation-of-powers challenge here.

IV.

For the foregoing reasons, we vacate Washington's sentence in No. 97-4235 and remand for resentencing to allow the district court to consider, without the use of Washington's protected statements to his investigating probation officer, whether Washington deserves any reduction in his offense level pursuant to U.S.S.G.§ 3B1.2. We affirm the judgment of the district court with respect to Davis' sen-

8

tence in No. 97-4246.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

9