*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0422P (6th Cir.)
File Name: 03a0422p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA
*Plaintiff-Appellee,*

*v.*

No. 02-5546

STEPHEN ESPALIN,
*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20003—Julia S. Gibbons, Circuit Judge.

Argued: September 9, 2003

Decided and Filed: December 3, 2003

Before: GUY and DAUGHTREY, Circuit Judges;
LAWSON, District Judge.[*]

───────────────

**COUNSEL**

**ARGUED:** M. Dianne Smothers, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for

───────────────

[*] The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

Appellant. Timothy R. DiScenza, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** J. Patten Brown, III, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for
Appellant. Timothy R. DiScenza, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

GUY, J., delivered the opinion of the court, in which
DAUGHTREY, J., joined. LAWSON, D. J. (pp. 4-15),
delivered a separate concurring opinion.

───────────────

**OPINION**

───────────────

RALPH B. GUY, JR., Circuit Judge. Defendant, Stephen
Espalin, entered a guilty plea to an information charging him
with threatening the President of the United States in
violation of 18 U.S.C. § 871. The trial judge imposed a
sentence of 18 months' imprisonment to be followed by two
years of supervised release. No objections were raised prior
to sentencing concerning either the applicability of the
guidelines applied or the sentencing range. Defendant filed
a motion for a downward departure, which was denied.

Espalin now appeals claiming the court erred in not
granting his motion for a downward departure. No claim is
made that the trial judge was unaware of her authority to grant
a downward departure. Because we have no jurisdiction to
consider an appeal from the denial of a downward departure
under these circumstances, we affirm.

**I.**

We have repeatedly held, as have all other circuits, that
where a sentence is not imposed in violation of law or is not
the result of an incorrect application of the guidelines, the
refusal of the trial judge to grant a downward departure is not

an issue cognizable on appeal. *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995). The defendant acknowledges as much, but attempts to avoid this result by arguing that the probation officer overstepped her bounds in preparing the presentence report and became an advocate arguing against the granting of the requested downward departure.

Our review of the sentencing hearing, as well as the probation report itself, convinces us that no impropriety occurred. More importantly, even if we were to hold that the probation officer overstepped her bounds, the result would not change. The trial judge is a very experienced jurist, and there is no indication that she abdicated her decisional role by merely rubber-stamping the recommendation of the probation officer. Judge Lawson in his concurrence thoughtfully sets forth the proper role of the probation officer; however, in the last analysis the trial judge is the filter between the recommendation of the probation officer and the sentence actually imposed. Appellate relief would be available only if improper actions of a probation officer resulted in the trial judge making a reviewable sentencing error of a type requiring reversal or remand.

The defendant also devotes a good portion of his brief to a polemic against the sentencing guidelines and the lack of sentencing discretion that remains with a federal trial judge. Although many federal judges might echo these sentiments, they are addressed to the wrong audience. Congress established the guideline system, and only Congress can change that system.

**AFFIRMED**.

_____

## CONCURRENCE

_____

DAVID M. LAWSON, District Judge (concurring). I agree with the majority's conclusion that the denial of a downward departure motion by a sentencing judge who acknowledges her authority to depart is beyond our power to review. *See United States v. Taylor*, 286 F.3d 303, 305 (6th Cir. 2002). I also fully concur with the holding that the probation officer's statements in the presentence report and its addendum did not violate any of the defendant's substantial rights. Whatever the propriety of the comments in a presentence report, it would be a rare case indeed where a probation officer's rhetoric could overwhelm the independent judgment of a sentencing court. I write separately, however, to express my views on the subject of the proper role of a presentence investigator under the Sentence Reform Act of 1984 and the Federal Rules of Criminal Procedure, from the point of view of a district court judge sitting on this court by designation.

I.

After the defendant pleaded guilty to threatening the President of the United States, a United States Probation Officer prepared a presentence report (PSR) calculating a total offense level of 6, and a criminal history category of VI, yielding a guideline range of 12 to 18 months. The statutorily-authorized maximum sentence for the offense is five years. 18 U.S.C. § 871. The probation officer included language in the PSR commenting on "factors that may warrant departure," stating:

> Pursuant to § 4A1.3, "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence

departing from the otherwise applicable guideline range." The defendant has 27 criminal history points. The Court may establish that Criminal History Category VI does not adequately reflect the seriousness of the defendant's criminal history given the nature of the prior offenses. Since at least 1975, the defendant has consistently been arrested for crimes involving fraud, manipulation, and deceit in order to avoid a law-abiding lifestyle. There is a strong likelihood that the defendant will continue this pattern and victimize more individuals.

J.A. at 75.

The defendant filed objections to this section, contending that the probation officer failed to recognize that the defendant is entitled to a downward departure for diminished capacity and that this was an "obvious" factor the probation officer missed. The defendant also called into question the probation officer's "objectivity" and requested that the probation officer "not be allowed any ex parte communication with the court." J.A. at 10. In addition, he filed a motion for a downward departure on the basis of USSG § 5K2.13, which states:

A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

In response to the motion, the probation officer supplemented the PSR with an addendum that contained the following language:

Section 5K2.13, Diminished Capacity, allows for a sentence below the guideline range if the defendant committed the offense while suffering from a significantly reduced mental capacity. Application Note 1 to § 5K2.13 states that "significantly reduced mental capacity" means that the defendant has a significantly impaired ability to understand the wrongfulness of the behavior comprising the offense or an impaired ability to control behavior that the defendant knows is wrongful.

Section 5K2.13 also states that the Court *may not* (emphasis added) depart below the guideline range if the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. The defendant has accumulated a total of 27 criminal history points. He has two previous convictions for sexual offenses, as well as numerous convictions for theft and fraud. A psychological evaluation was conducted by Emily Fallis, Ph.D. in September 2001. In her evaluation, Dr. Fallis stated, "Mr. Espalin acknowledged a lifestyle of conning others, particularly young men, and fraudulent behavior beyond his criminal record for the past several years." Examples of such behavior include taking long bus trips and staying in hotels without paying. In addition, the defendant "confessed he 'conned' the man he allegedly tried to frame in the current case (Julian) 'out of a lot of money.' He added that he twice attempted to steal Julian's car as well." The defendant's criminal convictions and examples of uncharged fraudulent behavior provided to Dr. Ellis are evidence of the defendant's extensive history of victimization of others. Based on the defendant's pattern of criminal activity, it is likely that the defendant will continue to engage in criminal behavior.

In addition, the psychological evaluation conducted by Dr. Fallis does not indicate that the defendant has a significantly reduced mental capacity. She diagnosed the defendant with Malingering and Borderline Personality Disorder. According to Dr. Fallis, "a personality disorder refers to a pattern of inner experience and behaviors present since youth which leads to social or occupational impairment or to both sorts of impairments. This enduring pattern is inflexible and pervasive." There is no evidence to suggest that the personality disorder contributed to diminished capacity. During the study period, the defendant also admitted to Dr. Fallis that he was "80 per cent" regretful that he did not recant his threat to harm President Bush. He stated that a part of him wants to continue making the threats because he enjoys the attention that he is getting.

During an interview with the probation officer, Espalin stated that he told the police that his friend was making bombs because he was angry at the friend for ending an affair. He also admitted that he threatened the President because he was mad. It appears that the defendant acted on his anger without considering the consequences of his behavior; however, this does not indicate a significantly reduced mental capacity.

J.A. 124-25.

The defendant objected to this commentary below, and now argues on appeal that the probation officer's comments are improper because they constitute advocacy, whereas the proper role of a probation officer, according to the defendant, is to serve as a dispassionate reporter of facts in the service of the sentencing court.

II.

The proper content of a PSR is prescribed by Federal Rule of Criminal Procedure 32(b), which in its form at the time of the defendant's sentencing stated:

(4) Contents of the Presentence Report. The presentence report must contain–
(A) information about the defendant's history and characteristics, including any prior criminal record, financial condition, and any circumstances that, because they affect the defendant's behavior, may be helpful in imposing sentence or in correctional treatment;
(B) the classification of the offense and of the defendant under the categories established by the Sentencing Commission under 28 U.S.C. § 994(a), as the probation officer believes to be applicable to the defendant's case; the kinds of sentence and the sentencing range suggested for such a category of offense committed by such a category of defendant as set forth in the guidelines issued by the Sentencing Commission under 28 U.S.C. § 994(a)(1); *and the probation officer's explanation of any factors that may suggest a different sentence- -within or without the applicable guideline-- that would be more appropriate, given all the circumstances*;
(C) a reference to any pertinent policy statement issued by the Sentencing Commission under 28 U.S.C. § 994(a)(2);
(D) verified information, stated in a *nonargumentative style*, containing an assessment of the financial, social, psychological, and medical impact on any individual against whom the offense has been committed;
(E) in appropriate cases, information about the nature and extent of nonprison programs and resources available for the defendant;
(F) in appropriate cases, information sufficient for

the court to enter an order of restitution;
(G) any report and recommendation resulting from a study ordered by the court under 18 U.S.C. § 3552(b); and
(H) any other information required by the court.
(5) Exclusions. The presentence report must exclude:
(A) any diagnostic opinions that, if disclosed, might seriously disrupt a program of rehabilitation;
(B) sources of information obtained upon a promise of confidentiality; or
(C) any other information that, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons.
(6) Disclosure and Objections.
(A) Not less than 35 days before the sentencing hearing--unless the defendant waives this minimum period--the probation officer must furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the Government. The court may, by local rule or in individual cases, direct that the probation officer not disclose the probation officer's recommendation, if any, on the sentence.
(B) Within 14 days after receiving the presentence report, the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report. After receiving objections, the probation officer may meet with the defendant, the defendant's counsel, and the attorney for the Government to discuss those objections. *The probation officer may also conduct a further investigation and revise the presentence report as appropriate.*
(C) Not later than 7 days before the sentencing hearing, the probation officer must submit the presentence report to the court, *together with an addendum setting forth any unresolved objections,*

*the grounds for those objections, and the probation officer's comments on the objections.* At the same time, the probation officer must furnish the revisions of the presentence report and the addendum to the defendant, the defendant's counsel, and the attorney for the Government.
(D) Except for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the presentence report as its findings of fact. For good cause shown, the court may allow a new objection to be raised at any time before imposing sentence.

Fed. R. Crim. P. 32(b) (2000) (emphasis added).

The tasks of the probation officer under the Rule include gathering information (e.g., the defendant's "history and characteristics"), expressing opinions (stating "the classification of the offense and of the defendant . . . as the probation officer believes to be applicable"), making judgments ("explain[ing] . . . factors that may suggest a different sentence . . . that would be more appropriate"), reporting on the crime's impact on the victim, mediating disputes that arise as a result of the draft PSR, and commenting on unresolved objections. The Rule demands that some of these functions be carried out in a neutral manner; for example, facts relating to victim impact must be reported in "a nonargumentative style." Fed. R. Crim. P. 32(b)(4)(D) (2000). However, by their nature, other duties necessarily require the probation officer to stake out and defend a position.

It has been suggested that when the probation officer's conclusion on a matter that affects the guideline range differs from a position taken by the government or, as here, the defendant, the probation officer thereby assumes the role of an advocate. *See United States v. Johnson*, 935 F.2d 47, 49 (4th Cir. 1991). Indeed, the role of the probation officer has changed substantially in the post-Sentencing Guideline era.

*See* Sharon M. Brunzel, *The Probation Officer and the Federal Sentencing Guidelines: Strange Philosophical Bedfellows*, 104 Yale L.J. 933, 945, 962 (Jan. 1994) (positing that the pre-Guideline probation officer served as "the court's 'eyes and ears,' a neutral information gatherer with loyalties to no one but the court," whereas the Sentencing Guidelines have increased the probation officer's "decision-making responsibilities" directly relating to guideline range calculations and have thrust the officer into "the business of lawyering"). Decisions that predate the implementation of the Sentencing Guidelines assume the absence of the probation officer's allegiance to one side or the other as a fundamental premise that permits the acquisition and transmission of information to the sentencing judge in a way that is removed from the adversarial system yet is consistent with due process. *See, e.g., Williams v. New York*, 337 U.S. 241, 249-50 (1949) (holding that "modern" practice of acquiring sentencing information through probation agents does not offend the Confrontation Clause, and observing that "most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination"); *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (holding that a sentencing court may hold *ex parte* conferences with a probation officer). Despite their new, guideline-imposed role, however, the probation officers' obligation to remain neutral has not shifted. That does not mean, however, that probation officers should not advance a position and provide a dispassionate rendition of the facts in support of their conclusion. Indeed, the obligations imposed on them by Rule 32 and the Sentencing Guidelines require at least that much.

Other Circuits that have considered the question have endorsed the requirement that probation officers must remain as unbiased operators under the Sentencing Guidelines, unaligned with either side. *See Johnson*, 935 F.2d at 49-50 (holding that throughout the process of interviewing a defendant, preparing a presentence report, and discussing the

report during a presentence conference with the court, a probation officer should continue to be a neutral, information-gathering agent of the court, not an agent of the prosecution); *United States v. Rogers*, 921 F.2d 975, 980 (10th Cir. 1990) (stating that the probation officer acts as an agent of the court for the purpose of gathering and classifying information and informing the court in the exercise of its sentencing responsibility). That requirement ought not impair probation officers' effectiveness or compromise their independence. *See United States v. Woods*, 907 F.2d 1540, 1543-44 (5th Cir. 1990) (rejecting the defendant's claim on appeal that a probation officer acted in a prosecutorial capacity because he recommended a higher quantity of drugs than that to which the prosecutor had stipulated, the court instead finding that the probation officer's action demonstrated his "independence of the prosecution and his obligation to recommend what he believes to be a correct sentence to the court"); *United States v. Belgard*, 894 F.2d 1092, 1098-99 (9th Cir. 1990) (holding (1) that the role of probation officers under the Sentencing Reform Act in investigating offenses for sentencing purposes did not violate separation of powers principles; (2) the probation officer's performance of her investigation and recommendation functions did not violate due process, despite the defendant's contention that the probation officer performed judicial decision-making functions that resulted in a deprivation of his right to be heard; and (3) the probation officer's presentence report to the court did not bias the court so that it would be unable to sit as a neutral fact finder and render an impartial sentencing decision). Rather, the neutrality requirement merely reaffirms the principle that the probation officer has no fealty to either side, but remains accountable to the court for accurately reporting the facts and the legal conclusions that fairly flow from them in order to assist the court in discharging its sentencing responsibilities. *See United States v. Jackson*, 886 F.2d 838, 844 (7th Cir. 1989) (holding that, "[n]otwithstanding the reduced discretion now afforded district judges under the Sentencing Guidelines, the duty and responsibility for imposition of sentence has not shifted from district judges to probation officers").

The defendant cites *United States v. Sifuentez*, 30 F.3d 1047 (9th Cir. 1994), in support of his claim that the probation officer acted improperly in this case. In that case, the probation officer responded to the defendant's argument that he was entitled to a downward departure from the sentencing guidelines by writing an addendum to the PSR, which stated:

> Defendant's count of conviction . . . reveals that defendant possessed drugs while in prison. *It is our opinion* that defendant's possession of drugs in prison jeopardized the safety and security of the institutional staff and inmates . . . . Defense counsel also contends that the mandatory sentence of 120 months for [defendant's] prior felony conviction is a factor strongly supporting a downward departure. We disagree. This sentence should have been a deterrence for [defendant] preventing further criminal activity. However, *this does not appear to be the case as [defendant] continued to engage in criminal drug activity.*

*Id*. at 1048 (emphasis added). The defendant argued on appeal that Rule 32 prohibited the probation officer from making or advocating departure recommendations in the presentence report. The court found that nothing in 18 U.S.C. § 3553(b) (authorizing sentencing departures), the Sentencing Guidelines, or the Federal Rules of Criminal Procedure explicitly prohibited departure recommendations in presentence reports. *Id*. at 1049. "While 18 U.S.C. § 3553(a) does require that such reports conform with Rule 32, Rule 32(c) permits, and even expects, that a probation officer will make a variety of sentencing recommendations, including those about departures." *Ibid*. The court characterized the language in the addendum as "strong" and "com[ing] close to crossing the line into impermissible advocacy," but found the report "acceptable" since it was not "unfair to the defendant." *Id*. at 1049-50.

I suppose that there could be cases in which the probation officer oversteps permissible limits by becoming personally

embroiled in a sentencing issue, just as there are cases in which a judge's impartiality could be questioned. In those instances, the probation officer's service to the court would not be helpful, since there would be reason to doubt the quality of the information coming to the court on which sentencing decisions are based. When a probation officer deliberately omits or mischaracterizes relevant facts, or intentionally misstates the law, or has an interest in the outcome of the case or some other conflict of interest, there likely would be a basis to question the probation officer's objectivity. Similarly, if the probation officer excludes or ignores competing arguments, he or she would not be doing the job expected by the sentencing court. But even then, the adversary system contains safeguards that protect the defendant's interest in bringing forth facts that give an accurate picture to the sentencing judge. *See* Fed. R. Crim. P. 32(f)(1) (2002) (allowing the parties to "state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report"); 32(i)(1)(C) (requiring the sentencing court to "allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence").

A sentencing court is best served by objective, accurate information from the probation officer. That information will likely be detrimental to the position of one side or the other, or might even contravene the parties' stipulations. *See, e.g., Woods*, 907 F.2d at 1543-44 (where probation officer recommended a drug quantity higher than the parties had agreed to). Probation officers ought not be discouraged from setting forth such facts. Moreover, making recommendations on guideline scoring decisions or departure motions, and taking a position on unresolved objections, is not only allowable, it is required by Rule 32. Ordinarily, the recommendations that are the most useful to the district judge are those that are based on the specific text of the Sentencing Guidelines Manual, including the commentary, and are tied to the facts of the case as set forth in the body of the PSR.

Such recommendations may be influential with the court, but not unreasonably so, just as the recommendation of a magistrate judge under 28 U.S.C. § 636(b)(2)(B) properly may be considered and even adopted by an Article III judge. In such circumstances, the judge conducts a *de novo* review of the facts and makes an independent finding, informed by the probation officer's reported facts and stated opinions, which may be challenged by the parties. *Cf.* Fed. R. Crim. P. 32(i) (2002). Similarly, this court has observed that "[t]he district court must ordinarily rely in considerable measure upon a presentence report, but it is the district court that must make the hard decisions in cases such as this with a wide range of sentencing issues and legal determinations to be made." *United States v. Tocco*, 200 F.3d 401, 436 (6th Cir. 2000).

In this case, the probation officer informed the court of the possibility of an upward departure, and recommended against a downward departure under USSG § 5K2.13. I understand how this language might sound like advocacy to the defendant, against whom the recommendation went. It is an accusation often leveled at a decision maker by the losing side. Indeed, the probation officer emphasized the facts that were more favorable to the government, but she did so accurately. When the recommendation is based fairly on the facts and dispassionately traces its way through the law to a sensible conclusion, the requirement of neutrality has been met. I agree that the probation officer's statements did not offend the requirement of neutrality in the context of former Rule 32(c) (now Rule 32(d)).