JOURNAL ENTRY AND OPINION
This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1. Defendant-appellant Rashaun Yearby appeals the trial court's denial of his motion to withdraw his guilty plea.
Yearby was indicted in three separate cases. At the time of his indictment he was on post-release control for another offense. His first indictment for events on November 3, 1999, included three counts: trafficking in cocaine, preparation of drugs for sale, and carrying a concealed weapon.[1] His second indictment was for aggravated robbery with a firearm specification, which event occurred on December 22, 1999. Finally, Yearby was also indicted for the December 4, 1999 offense of possession of drugs. The first indictment occurred on December 28, 1999.
The court found Yearby indigent and assigned him counsel. He dismissed this counsel, and his grandmother hired another defense attorney for him.
Yearby was with his friend Darnell Gatson when they were arrested for selling cocaine. At that time, Yearby had hidden a gun on his person in violation of R.C. 2923.12.[2] Before he was indicted on that charge, he and Darnell stopped a fifteen-year-old boy on the street. Yearby was driving when Darnell got out of the car and robbed the boy at gunpoint. He initially took the boy's jacket and then, at Yearby's instruction, also took the boy's shoes and checked his pockets. Darnell returned to the car and Yearby drove away.
When the boy went home and told his father what had happened, both his parents and he got into the family van and drove around the neighborhood until they spotted Yearby and Darnell walking down the street. Yearby was wearing the boy's jacket; the boy's shoes were found in Yearby's grandmother's garage. When confronted by the boy's father, Yearby willingly returned the shoes and jacket.
Yearby initially pleaded not guilty to both indictments, but changed his plea to guilty, two days after receiving a third indictment for possession of drugs. Immediately after sentencing, Yearby filed a motion to modify sentence, which motion was denied.
Seven months later, Yearby, represented by a different attorney, filed a motion to withdraw his guilty plea and motion to modify sentence, which motions were also denied. With a third attorney, he then filed this appeal.
Appellant states five assignments of error. For his first assignment of error, he states:
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION TO WITHDRAW HIS PLEAS WAS DENIED WITHOUT A HEARING.
Withdrawal of a guilty plea is governed by Crim.R. 32.1, which provides as follows:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.
An appellate court reviews a denial of a motion to withdraw a guilty plea under the abuse of discretion standard. State v. Xie (1992),62 Ohio App.2d 521; State v. Fish (1995), 104 Ohio App.3d 521. If the motion to change plea is filed prior to sentencing, the courts are far more willing to grant the motion. Id. Courts are reluctant to grant the motion filed after the sentence is imposed, however, because the defendant would have the opportunity to "sentence shop."
 "* * * Before sentencing, the inconvenience to court and prosecution resulting from a change in plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. * * *"
State v. Peterseim (1980), 68 Ohio App.2d 211, 213, quoting Kadwell v.United States (C.A.9, 1963), 315 F.2d 667, 670. (Emphasis in original.)
If the facts, as alleged by the defendant, and taken as true, do not require the court to allow the defendant to withdraw his guilty plea, the court is not required to hold a hearing on defendant's motion. State v.Legree (1988), 61 Ohio App.3d 568, 573; State v. Blatnik (1984),17 Ohio App.3d 201. Only when the appellant can establish that he must be permitted to change his plea to avoid a manifest injustice will a court allow him to withdraw his plea. State v. Smith (1977), 49 Ohio St.2d 261.
Because this court granted defendant permission to file a delayed appeal, the case at bar is a direct appeal, although it was filed later than thirty days after the sentence was imposed.[3] In State v.Strzala (Oct. 11, 2001), Cuyahoga App. NO. 79182, unreported, 2001 Ohio App. LEXIS 4563, this court determined that if the court granted defendant a motion for delayed appeal the case is considered a direct appeal and not a postconviction relief petition. See, also, State v. Maholtz (June 13, 1991), Cuyahoga App. No. 51096, unreported, 1991 Ohio App. LEXIS 2776.
However, "the same standard is used to determine whether an evidentiary hearing is warranted for withdrawal of a guilty plea as is used in determining whether a hearing is required on a postconviction relief petition. * * * A hearing is not required when the record, `* * * on its face, conclusively and irrefutably contradicts the allegations in support of withdrawal.'" State v. Gaitor (June 21, 1999), Mahoning App. No. 96-CA-234, at *16, quoting State v. Legree (1988), 61 Ohio App.3d 568,574.
The courts have consistently held that a trial court need not hold an evidentiary hearing in a motion to withdraw a plea if the only evidence provided consists of affidavits from interested parties which conflict with the facts elicited at the plea hearing. In a recent case this court held, for example, "[t]he trial court did not abuse its discretion in discounting [the affidavits of defendant and his girlfriend] as true statements of fact given the affiants' affiliation with one another and the fact that the affiants had a direct interest in the success of petitioner's efforts to obtain relief." State v. Woolfolk (Mar. 22, 2001), Cuyahoga App. No. 76671, unreported, 2001 Ohio App. LEXIS 1296, at *8. See, also, State v. Calhoun (1999), 86 Ohio St.3d 279 (Defendant's supporting affidavits from himself and his mother are based on out-of-court statements allegedly made by defendant's trial counsel. Therefore, they contain and rely on hearsay. In addition, the affiants clearly are relatives of the petitioner or otherwise interested in the success of petitioner's efforts.); State v. Moore (1994),99 Ohio App.3d 748 (Other factors that the court may consider in denying a live hearing are whether it appears from the face of the affidavit that it was prepared by a person other than the affiant or whether the affiants are relatives of the petitioner. * * * Similarly, when the affidavits are identical and rely on hearsay, the court may determine that they are not credible."); State v. Conway (Feb. 19, 1998), Highland App. No. 96 CA 936, unreported, 1998 Ohio App. LEXIS 763 ("When affidavits are offered in support of a petition for postconviction relief, the court has authority to weigh the credibility of those affidavits and deny based upon its assessment of them.")
Yearby argues that he was entitled to a hearing because he presented affidavits to support his allegations. The affidavits he relies on, however, are sworn by himself, his grandmother, and his aunt.[4]
Obviously, none of the affiants is disinterested. The affidavits all rely on hearsay, and the grandmother's and aunt's rely on double hearsay when they state that "Rayshawn [Yearby] was led to believe that he would be doing upwards of twenty years if he went to trial." Because of the nature of the evidence provided in these affidavits and because of the relationship between affiants and defendant, the trial court could properly find the statements lack sufficient credibility to require a hearing.
Further, wrong advice from counsel is not an adequate ground for vacating a guilty plea. "Where the defendant seeks to vacate his plea because of counsel's erroneous advice concerning the sentence imposed, most courts do not consider this allegation as `manifest injustice.'"State v. Goney (June 2, 2000), Montgomery App. No. 17799, unreported, 2000 Ohio App. LEXIS 2322, at 3. See, also, State v. Blatnik (1984),17 Ohio App.3d 201 ("suffice it to say that an overwhelming authority of case law states that manifest injustice, as contemplated by the rule, does not, ipso facto result from counsel's erroneous advice concerning the sentence that will be imposed.")
Rather, "[w]hen a petitioner submits a claim that his guilty plea was involuntary, a `record reflecting compliance with Crim.R. 11 has greater probative value' than a petitioner's self-serving affidavit. State v.Brehm (1997), 1997 Ohio App. LEXIS 3125, Seneca App. No. 13-97-05, unreported, following State v. Moore (1994), 99 Ohio App.3d 748, 749,753, 651 N.E.2d 1319." State v. Saylor (1998), 125 Ohio App.3d 636, 641.
Therefore, although defendant stated in his affidavit that his attorney "indicated to [him] that if [he] entered into a plea agreement, [he] would receive no more than five years, and that the court would grant judicial release after the minimum mandatory," this statement is contradicted by the hearing transcript in which defendant stated that he understood that he could receive a sentence of up to fourteen years with an additional seven years in bad time and that no promises or threats were made to induce his plea. Tr. at 16-17. "The trial court cannot grant a motion to withdraw a plea based upon an affidavit which directly contradict [sic] the record." State v. Winters (July 20, 1998), Licking App. No. 97CA144, unreported, 1998 Ohio App. LEXIS 3552, at *4. In fact, defendant concedes in his Motion to * * * Withdraw Guilty Plea that "the transcript certainly shows this court's compliance with the rules * * *."
Defendant has failed to show that a manifest injustice would result if he were not permitted to withdraw his plea. "A mistaken belief as to the consequences of a plea is insufficient to warrant the withdrawal of a plea after sentencing." State v. Novak (Sept. 10, 1998), Cuyahoga App. No. 72849, unreported, 2000 Ohio App. LEXIS 6262, at *12-13, citing Statev. Sabatino (1995), 102 Ohio App.3d 483.
The trial court's refusal to allow appellant to withdraw his guilty plea does not constitute an abuse of discretion. Accordingly, the first assignment of error is overruled.
For his second assignment of error, appellant states:
 II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS NOT GRANTED LEAVE TO WITHDRAW HIS PLEAS OF GUILTY AS HIS PLEAS OF GUILTY WERE NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED.
Appellant claims that because he was given improper advice by his counsel his plea was not knowingly made. He provides no evidence other than his assertion of a promised sentence and the affidavits to support this claim.
The trial court, before accepting a guilty plea from a defendant, must determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation." Crim.R. 11(C)(2)(a). An appellant must show some "prejudicial effect from his plea, however, before the guilty plea may be vacated."State v. Stewart (1977), 51 Ohio St.2d 86, 93.
Further, "[a]dherence to the provisions of Crim.R. 11(C)(2) requires an oral dialogue between the trial court and the defendant which enables the court to determine fully the defendant's understanding of the consequences of his plea of guilty or no contest." State v. Caudill
(1976), 48 Ohio St.2d 342, syllabus para. 2.
Crim.R. 11 "requires the record to show that the defendant voluntarily and knowingly waived his constitutional rights. The court specified these rights as (1) the Fifth Amendment privilege against compulsory self-incrimination, (2) the right to a trial by jury, and (3) the right to confront one's accusers." State v. Nero (1990), 56 Ohio St.3d 106,107, citing Boykin v. Alabama (1969), 395 U.S. 238, 242-243. Additionally, the court must inform the defendant of several nonconstitutional rights: the nature of the charge against him; the maximum sentence involved; and whether he is eligible for probation. Id.
Appellant concedes in his common pleas court motion to withdraw guilty plea/motion to modify sentence that "[a]lthough the transcript certainly shows this court's compliance with [Crim.R. 11], it is what transpired off the record that forms the basis of this motion to withdraw the plea." Appellant's brief at 2. In a direct appeal this court cannot consider, however, what may have happened off the record. We can address only the record, including the transcript, which here clearly shows that the trial court complied with Crim.R. 11. Appellant denied that any deal had been made in exchange for his plea. He was also clearly informed of the maximum sentence he could receive. There is no evidence in the record that his plea was not knowingly made. The second assignment of error is overruled.
For his third assignment of error, appellant states:
 III. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Appellant argues that he was misled as to the sentence he would receive, that his attorney failed to get him a haircut prior to the hearing, and that his attorney failed to properly prepare him for addressing the court. Appellant fails to provide any evidence that any of these alleged omissions had a prejudicial effect.
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court provided a two-part test for reviewing claims of ineffective assistance of counsel. First, the defendant must show that his lawyer's "performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance." State v. Gonzalez (March 15, 2001), Cuyahoga App. No. 77338, unreported, 2001 Ohio App. LEXIS 1185, at *15. Appellant must show that but for his counsel's substandard performance the outcome of his case would have been different. However, [j]udicial scrutiny of a lawyer's performance must be highly deferential. Id.
None of the "errors" appellant alleges reaches the level of a substandard performance. As addressed above, the alleged promises made to appellant are not sufficient to constitute prejudicial error. Appellant clearly stated on the record that he was aware of the potential sentence and that he had not been promised anything in exchange for his plea. Failing to arrange a haircut for the defendant, although it may have had a minor subconscious effect on the court's response to appellant, does not reach the level of ineffective assistance of counsel. Nor has appellant provided any evidence that the lack of a haircut had any impact on his sentence at all.
Finally, appellant claims that his attorney's failure to properly prepare him for addressing the court was prejudicial. Again, he has failed to demonstrate what prejudicial effect this alleged lack of preparation had. To support a claim of ineffective assistance of counsel, he needs to specify exactly what preparation was lacking. General claims will not suffice. The third assignment of error is overruled.
For his fourth assignment of error, appellant states:
 IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT WHEN THE COURT IMPOSED CONSECUTIVE SENTENCES WITHOUT ANY APPROPRIATE FINDINGS.
Appellant argues, and the state concedes, "that findings required by R.C. 2929.14(E)(4) were not made as a part of the record in this case." Appellee's brief at 12. R.C. 2929.19(B)(2)(c) states, in part, as follows:
 (2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences;
The statute requires the trial court not only to make certain findings, but also to give its reasons.
The state argues, however, that the "basis for consecutive sentences clearly exists" in the transcript.[5] It is not the job of the appellate court to hunt through a transcript looking for the "basis" of required findings.
Because the court failed to meet the statutory requirements for sentencing, the fourth assignment of error is sustained and this case is remanded to the trial court for resentencing consistent with the statute.
For his fifth assignment of error, appellant states:
 V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT RELIED UPON EVIDENCE PRODUCED IN OPEN COURT THEN IMPOSED SENTENCE.
The trial court engaged in dialogue with appellant at the sentencing hearing. In that dialogue, the judge mentioned the defendant's admission that the victim's shoes were found in his grandmother's garage, as well as the defendant's prior criminal history, which was available to the judge on the county computer system, and the drug trafficking indictment from the case which the prosecutor nolled when defendant agreed to plead in this case. Appellant has presented no evidence or law to support his allegation that these remarks were improper.
As the state pointed out in its brief, the rules of evidence do not control the proceedings of a sentencing hearing, and therefore the court was permitted to consider information which was not part of the record. "It is well-settled that the court may, in the sentencing process, consider information which would have been inadmissible at trial. Statev. Cassidy (1984), 21 Ohio App.3d 100, 101, citing State v. Davis
(1978), 56 Ohio St.2d 51. Indeed, the trial court not only is permitted, but is "mandated, to consider the circumstances of the offense." Id. at 102.
The sentencing hearing does not engender the same due process rights that a trial for guilt or innocence would engender: "a defendant's due process rights are not violated under the United States Constitution when the sentencing court considers information relevant to the circumstances of the offense even though received outside open court. Williams v. NewYork (1949), 337 U.S. 241 * * *." Id.
Defendant argues that he was denied due process because even though there was no presentence report, the court made reference to his drug trafficking history and the criminal history of his co-defendant. He provides no case law which supports this assertion.[6]
We find no error in the dialogue which transpired at the sentencing hearing. Accordingly, the fifth assignment of error is overruled.
This case is affirmed in part, reversed in part, and remanded for resentencing in accordance with R.C. 2929.14(E)(4).
It is ordered that appellee and appellant shall share equally the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENTONLY.
[1] Because he was a convicted felon, Yearby's mere possession of a gun was illegal.
[2] Yearby had several previous convictions, the most recent being attempted felonious assault.
[3] Several districts have ruled that a motion to withdraw a plea filed after the thirty-day appeal deadline automatically converts to a petition for postconviction relief. "Where, after the time for filing a direct appeal has expired, a defendant moves to withdraw his guilty plea claiming a violation of his constitutional rights, the motion is in substance a postconviction petition for relief under R.C. 2953.21 * * *." State v.Hill (1998), 129 Ohio App.3d 658, syllabus. See, also, State v. Smith
(Sept. 13, 2001), Cuyahoga App. No. 79028, unreported, 2001 Ohio App. LEXIS 4069 ("this court has held that if a motion to withdraw a guilty plea is filed outside the time for a direct appeal and it alleges a constitutional violation as the basis for the request to vacate a conviction and sentence, the motion must be treated as one for post-conviction relief under R.C. 2953.21."); State v. Northern (June 14, 2001), Allen App. No. 1-01-01, unreported, 2001 Ohio App. LEXIS 2627;State v. Bass (June 15, 2001), Hardin App. No. 6-2000-12, unreported, 2001 Ohio App. LEXIS 2650.
[4] They are carbon copy affidavits: in fact, the aunt's affidavit has the phrase "my grandson" crossed out and replaced with "her grandson." These affidavits are otherwise identical.
[5] In its two-sentence discussion of this assignment of error the state does not cite to instances in the record where the basis for the findings occur.
[6] The case law defendant cites is inapplicable to the case at bar. Two of the cases he cites address postconviction proceedings, one addresses a contempt hearing, and one the use of an expert textbook at sentencing.