HURWITZ, Justice,
concurring in part and dissenting in part.
¶ 85 I concur in the Court’s opinion insofar as it affirms McGill’s convictions and the jury’s findings of statutory aggravating circumstances. I respectfully part company with the majority, however, with respect to its rejection of McGill’s Confrontation Clause claims. See Op. ¶¶ 45-52. I believe that the Confrontation Clause of the Sixth Amendment applies to the penalty phase of a capital sentencing proceeding[9] and that testimonial hearsay cannot be used to impose a death sentence.
I.
A.
¶ 86 The Sixth Amendment to the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” The Supreme Court has made plain that the Confrontation Clause prohibits “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.” Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); see also Davis v. Washington, — U.S. -, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006) (quoting Crawford ).
¶ 87 The majority assumes that the deposition of Floyd Lipps and the police interview of Jeff Uhl were “testimonial.” Op. ¶ 45 n. 3. That assumption is clearly warranted. Both Lipps and Uhl were questioned by agents of the state for the express purpose of obtaining *164 evidence to be used against McGill during the penalty phase of a capital trial. Crawford teaches that “the principal evil at which the Confrontation Clause was directed” was the “use of ex parte examinations as evidence against the accused.” 541 U.S. at 50, 124 S.Ct. 1354; see also id. at 52, 124 S.Ct. 1354 (“Statements taken by police officers in the course of interrogations are ... testimonial.”); accord Davis, 126 S.Ct. at 2276 (holding that the product of “interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) ... is testimonial”).
¶ 88 Because the challenged statements were testimonial and McGill had no opportunity to cross-examine either witness, the Confrontation Clause applies on its face if the statements were introduced in a “criminal prosecution.” The issue before us, therefore, is whether the penalty phase of a capital sentencing proceeding is part of a criminal prosecution.[10]
B.
f 89 As a matter of pure logic and textual-ism, it is difficult to characterize the penalty phase as anything other than part of a criminal prosecution. The proceeding is, of course, designed to determine what criminal penalty will be imposed on one convicted of first degree murder. Under A.R.S. § 13-703.01, the penalty phase is structured much in the same manner as the rest of a criminal trial — each side presents evidence, examines the witnesses, makes summations, and the jury is eventually left to make the ultimate determination — whether any mitigation is sufficiently substantial to call for leniency in light of the aggravation previously found. The majority quite correctly concludes that the aggravation phase of a capital case is part of a criminal prosecution for Confrontation Clause purposes. Op. ¶ 51. Because both the aggravation and penalty phases are parts of a single capital “sentencing proceeding” under Arizona law, see A.R.S. § 13-703.01(A), (C), (D), it is difficult to understand why one phase would be part of a criminal prosecution while the other would not.
¶ 90 The textual argument is buttressed by the Supreme Court’s prior interpretations of the Sixth Amendment. The Sixth Amendment sets forth a list of rights guaranteed “[i]n all criminal prosecutions,” including the right to counsel. The Supreme Court has held that the right to counsel is applicable to sentencing proceedings. Mempa v. Rhay, 389 U.S. 128, 137, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Because the Sixth Amendment does not contain separate definitions of “criminal prosecutions” with respect to its various guarantees, it would therefore seem to logically follow that the Confrontation Clause also applies to sentencing proceedings.
¶ 91 But in Sixth Amendment jurisprudence, as Crawford warns, textualism—or even logic — is often a trap for the unwary. See 541 U.S. at 42-43, 124 S.Ct. 1354. For example, the Supreme Court has held that the right to counsel applies to preliminary hearings. White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). Yet, hearsay is traditionally admissible in prehminary hearings. Costello v. United States, 350 U.S. 359, 363-64, 76 S.Ct. 406, 100 L.Ed. 397 (1956). It is therefore difficult to conclude that the term “criminal prosecutions” has the same meaning for all rights guaranteed by the Sixth Amendment.
¶ 92 As one commentator has aptly noted, the Supreme Court’s Sixth Amendment jurisprudence is “best described as fragmentary.” John G. Douglass, Confronting Death: Sixth Amendment Rights at Capital Sentencing, 105 Colum. L.Rev.1967, 1969 (2005). I therefore do not rely simply on the language of the Sixth Amendment in concluding that the Confrontation Clause applies to the penalty phase of a capital trial, and instead turn, as does the majority, to the case law in interpreting that language.
*165 c.
¶ 93 The majority relies upon Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), in concluding that capital sentencing proceedings are excluded from the term “criminal prosecution” for Confrontation Clause purposes. But, as the majority acknowledges, Op. ¶ 47 n. 4, Williams was not a Confrontation Clause case. Indeed, under the Supreme Court’s jurisprudence in 1949 it could not have been; the Court did not hold the Confrontation Clause applicable to the States until sixteen years later, in Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Williams is simply a case setting forth the minimum requirements of Fourteenth Amendment due process with respect to the use of hearsay testimony. As the majority correctly notes in its due process discussion (which I join), the Due Process Clause is satisfied when hearsay is reliable and the defendant is given notice and an opportunity to rebut the evidence. Op. ¶ 56.
¶ 94 As Crawford now makes clear, however, the Confrontation Clause requires more. Due process requires minimal substantive reliability, but the Confrontation Clause requires “procedural” reliability — reliability obtained “by testing in the crucible of cross-examination.” Crawford, 541 U.S. at 61, 124 S.Ct. 1354. It is not sufficient for Confrontation Clause purposes that “testimonial hearsay” be objectively rehable; it must also be subject to cross-examination.
¶ 95 Williams does not resolve the issue of whether the Confrontation Clause applies to the penalty phase of capital trials. Nor does any other Supreme Court decision. I therefore regard the question as open. A number of federal courts agree. See United States v. Higgs, 353 F.3d 281, 324 (4th Cir.2003) (noting that it “remains unclear whether the Confrontation Clause applies” in capital sentencing proceedings); Proffitt v. Wainwright, 685 F.2d 1227, 1253 (11th Cir.1982) (“Whether the right to cross-examine adverse witnesses extends to capital sentencing proceedings has not been specifically addressed by the Supreme Court.”); United States v. Jordan, 357 F.Supp.2d 889, 901 (E.D.Va.2005) (stating that “it appears that no court has specifically addressed this issue” since Crawford). Indeed, several state courts have directly held that the Confrontation Clause applies at capital sentencing. See, e.g., Rodriguez v. State, 753 So.2d 29, 44 (Fla.2000) (holding that the admission of hearsay statements “in the penalty phase violated the Confrontation Clause”); Ball v. State, 347 Md. 156, 699 A.2d 1170, 1190 (1997) (holding that the right of confrontation “extends to the sentencing phase of a capital trial and applies to live, victim impact witnesses as well as factual witnesses”) (alteration and quotation omitted); Russeau v. State, 171 S.W.3d 871, 880-81 (Tex.Crim.App.2005) (finding the Confrontation Clause applicable to capital sentencing), cert. denied, — U.S. -, 126 S.Ct. 2982, 165 L.Ed.2d 989 (2006). Whatever the merit of these decisions (a topic I address below) they surely undercut the contention that the issue was definitively resolved in Williams.
D.
¶ 96 Nor do I believe that our prior eases provide conclusive guidance. Our jurisprudence on the topic has been, to put it charitably, somewhat inconsistent. In State v. Hanley, a non-capital case, this Court concluded that the right of cross-examination applied at sentencing. 108 Ariz. 144, 148, 493 P.2d 1201, 1205 (1972). One year later, however, in another non-capital case, this Court held, without citation to Hanley, that after guilt had been established, the Due Process Clause did not require a sentencing judge to allow confrontation and cross-examination. State v. Thomas, 110 Ariz. 106, 109, 515 P.2d 851, 854 (1973).
¶ 97 In State v. Ortiz, a capital ease, this Court stated that “the confrontation clause applies only to ‘trials’ and not to sentencing hearings.” 131 Ariz. 195, 209, 639 P.2d 1020, 1034 (1981), overruled on other grounds by State v. Gretzler, 135 Ariz. 42, 57 n. 2, 659 P.2d 1, 16 n. 2 (1983). But four years later, in another capital case, we stated that Sixth Amendment confrontation “rights extend to the sentencing phase of a trial” but are not “as strong at the sentencing phase as at trial.” State v. Nash, 143 Ariz. 392, 401, 694 P.2d 222, 231 (1985). Then, State v. Green- *166 way, another capital case, held that there is no right to confrontation during sentencing when testimony is admitted to rebut mitigating evidence (as opposed to establishing aggravating factors). 170 Ariz. 155, 161 n. 1, 823 P.2d 22, 28 n. 1 (1991).
¶ 98 Even assuming that Ortiz and Green-way were correctly decided in 1983 and 1991, they do not resolve the issue before us today. Both cases were decided against the backdrop of Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Roberts held that the Confrontation Clause did not bar admission of an unavailable witness’s statements that either fell within a “firmly rooted hearsay exception” or otherwise bore “adequate ‘indicia of reliability.’ ” Id. at 66, 100 S.Ct. 2531. Crawford, however, abrogated the Roberts rule, providing that when hearsay is “testimonial,” reliability can only be shown through an opportunity for cross-examination. 541 U.S. at 61-62, 124 S.Ct. 1354. More importantly for present purposes, Crawford also clarified the historical understanding of the scope of the Confrontation Clause. Thus, our prior opinions must be reexamined in light of Crawford.
E.
¶ 99 Crawford makes clear that the extent of the Confrontation Clause is to be determined not by reference to modern rules of evidence, but rather by the expectation of the Framers at the time the Sixth Amendment was adopted in 1791. Id. at 43, 124 S.Ct. 1354 (“We must therefore turn to the historical background of the Clause to understand its meaning.”). Thus, the ultimate issue is whether the Framers would have expected that “testimonial” hearsay could be used by a jury to determine whether a murder defendant should live or die.
¶ 100 The history of capital sentencing is most instructive on this point. “[I]n 1791, the States uniformly followed the common-law practice of making death the exclusive and mandatory sentence for certain specified offenses,” including murder. Woodson v. North Carolina, 428 U.S. 280, 289, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). The jury’s verdict of guilt for murder thus automatically resulted in a death sentence in 1791. Because “[tjhere was no distinction between trial rights and sentencing rights ... in both purpose and effect, the trial was the sentencing.” Douglass, supra, at 1973.
¶ 101 At the time the Sixth Amendment was adopted, juries were well aware of the mandatory nature of death sentences. “Almost from the outset jurors reacted unfavorably to the harshness of mandatory death sentences.” Woodson, 428 U.S. at 289, 96 S.Ct. 2978. When unwilling to put a defendant to death, jurors would often either acquit the defendant outright or convict of a lesser crime. Id. at 290, 96 S.Ct. 2978 (noting the “not infrequent refusal of juries to convict murderers rather than subject them to automatic death sentences”); see also William Blackstone, 4 Commentaries 238-39 (1966) (explaining “pious perjury,” under which juries would return verdicts resulting in acquittal or conviction of a lesser crime when unwilling to sentence a defendant to death); John H. Langbein, The English Criminal Trial Jury on the Eve of the French Revolution, in The Trial Jury in England, France, Germany 1700-1900 37 (Antonio Padoa Schioppa ed.1987) (same).
¶ 102 Thus, the only evidence relied upon by juries in 1791 in determining whether a defendant should receive the death sentence was the evidence presented at trial on the issue of guilt or innocence — evidence plainly covered by the Confrontation Clause. The Framers could therefore have had no expectation that “testimonial” hearsay could have played any part in the decision about whether a defendant should live or die. Consequently, Crawford teaches that the Confrontation Clause bars the use of such hearsay in the selection phase of modern capital penalty proceedings.
¶ 103 To be sure, much has changed in capital litigation since 1791. Dissatisfaction with automatic death sentences led a number of states in the nineteenth century to “abandon mandatory death sentences in favor of discretionary death penalty statutes.” Woodson, 428 U.S. at 291, 96 S.Ct. 2978. Such systems, which had become widespread by the twentieth century, permit the jury (or a sentencing judge) “to respond to mitigating *167 factors by withholding the death penalty.” Id. Thus, by the time Williams was decided, it was accurate to say that in capital cases, a sentencing judge had long exercised “wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.” Williams, 337 U.S. at 246, 69 S.Ct. 1079.
¶ 104 But this was not the case at the time the Sixth Amendment was adopted. Whatever the virtues of modern capital sentencing, in 1791 the decision about whether a defendant should live or die was made solely on the basis of the evidence introduced during the trial on guilt or innocence. Because it has always been clear that the trial on guilt or innocence is a “criminal prosecution,” subject to the guarantees of the Confrontation Clause, “testimonial” hearsay could have played no role in the sentencing calculus in 1791. Even though capital sentencing procedures have today changed, Crawford teaches that the Sixth Amendment requires that “testimonial” hearsay has no place in the capital sentencing decision.[11]
II.
¶ 105 In my view, the Confrontation Clause precludes the use of testimonial hearsay by the State in the penalty phase of a capital sentencing proceeding.[12] The Lipps deposition and the Uhl interview should not have been admitted during the penalty phase of this ease.[13] I would therefore remand for a new penalty phase proceeding.

. Arizona law provides that when a defendant is convicted of first degree murder and the State seeks the death penalty, sentencing proceedings begin with an "aggravation phase” (sometimes referred to in case law as the "eligibility phase”) in which the trier of fact determines whether any alleged aggravating circumstance listed in Arizona Revised Statutes ("A.R.S.”) § 13-703(F) (Supp.2005) has been proved. A.R.S. § 13-703.01(C) (Supp.2005). If the trier of fact finds one or more aggravating circumstances, the sentencing proceedings move on to a "penalty phase” (sometimes referred to in case law as the "selection phase”) in which the issue is whether the death penalty should be imposed. A.R.S. § 13-703.01(D).

. Our state constitution provides that ”[i]n criminal prosecutions, the accused shall have the right ... to meet the witnesses against him face to face.” Ariz. Const, art. 2, § 24. McGill does not argue that this guarantee is different than the Sixth Amendment Confrontation Clause. I therefore assume arguendo that the two are congruent. See State v. Vincent, 159 Ariz. 418, 432-33, 768 P.2d 150, 164-65 (1989).

. This case does not require us to decide whether the Confrontation Clause applies to non-capital sentencing proceedings. While it is clear that “testimonial” hearsay played no role in capital sentencing proceedings in 1791, the historical record as to non-capital proceedings is less clear. See Apprendi v. New Jersey, 530 U.S. 466, 480 n. 7, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (noting that at the time of our founding, judicial discretion was prominent in sentencing of lesser and misdemeanor crimes); Williams, 337 U.S. at 246, 69 S.Ct. 1079 (noting the wide discretion that sentencing judges had in colonial times with regard to the type of evidence that could be considered in cases in which the sentence was not automatically mandated by a guilty verdict).

. By its terms, the Confrontation Clause does not apply to evidence submitted by the defendant. Thus, my reading of the Clause does not conflict with the Supreme Court’s command that the Eighth Amendment requires that the defendant be able to present a broad scope of mitigation evidence. See Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (”[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.”) (footnote omitted).

. The jury might very well have returned a death verdict even in the absence of the Lipps deposition and the Uhl interview, given the strong aggravation and the relatively minimal mitigating evidence. Because of the nature of the testimonial hearsay at issue (which accused McGill of plotting the death of Uhl), however, I cannot conclude beyond a reasonable doubt (nor does the majority suggest) that any Confrontation Clause error here was harmless. See Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding that before constitutional error can be found harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt”).